# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOE ALVES, individually and on behalf of all others similarly situated, <br><br>           Plaintiff, <br><br> v. <br><br> THE GOODYEAR TIRE & RUBBER COMPANY, <br><br>           Defendant. | C.A. No. 1:22-CV-11820-WGY |

## MEMORANDUM OF THE GOODYEAR TIRE & RUBBER COMPANY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TRANSFER VENUE

Michael T. Maroney (BBO #653476)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
michael.maroney@hklaw.com

Mark S. Melodia (*Pro Hac Vice*)
Sophie L. Kletzien (*Pro Hac Vice*)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY  10019
(212) 513-3200
mark.melodia@hklaw.com
sophie.kletzien@hklaw.com

*Counsel for The Goodyear Tire & Rubber Company*

Date: December 16, 2022

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................2

    **A.**    **The Parties** ...........................................................................................2

    **B.**    **Session Replay Code** .............................................................................2

    **C.**    **This Lawsuit** ........................................................................................3

ARGUMENT ........................................................................................................................4

**I.**    **THIS COURT LACKS PERSONAL JURISDICTION OVER GOODYEAR** ...........4

    **A.**    **Plaintiff's Complaint Fails To Establish That The Exercise Of Personal Jurisdiction Over Goodyear Comports With Due Process** ...............4

        **1.**    **Goodyear Is Not Subject To General Jurisdiction in Massachusetts** ...................................................................5

        **2.**    **Goodyear Is Not Subject To Specific Jurisdiction In Massachusetts** ...................................................................6

    **B.**    **Plaintiff's Complaint Fails To Establish That The Massachusetts Long Arm Statute Authorizes Jurisdiction Over Goodyear** ........................11

**II.**    **IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION** ........................................................................................................12

    **A.**    **Plaintiff Agreed To Litigate Disputes In Ohio.** ...................................12

        **1.**    **Plaintiff Was On Notice Of Goodyear's Terms of Use** ........................13

        **2.**    **Plaintiff's Claims Are Within The Scope Of The Forum-Selection Provision** .............................................................16

    **CONCLUSION** ........................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A Corp. v. All Am. Plumbing, Inc.*,
    812 F.3d 54 (1st Cir. 2016) ..................................................................................4, 6, 10

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for Western Dist. of Tx.*,
    571 U.S. 49 (2013) ...........................................................................................................12

*BNSF Railway Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017) ......................................................................................................5

*Bristol-Myers Squibb Co. v. Super. Ct. of California*,
    137 S.Ct. 1773 (2017) .......................................................................................................8

*Brown v. Dash*,
    C.A. No. 20-10980-FDS, 2020 WL 6806433 (D. Mass. Nov. 18, 2020) ...............................11

*Chouinard v. Marigot Beach Club and Dive Resort*,
    C.A. No. 20-10863-MPK, 2021 WL 2256318 (D. Mass. June 3, 2021) ..................................9

*Claudio-De Leon v. Sistema Universitario Ana G. Mendez*,
    775 F.3d 41 (1st Cir. 2014) ..............................................................................................12

*Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*,
    228 F.3d 24 (1st Cir. 2000) ..............................................................................................13

*Copia Commc'ns, LLC v. AMResorts, L.P.*,
    812 F.3d 1 (1st Cir. 2016) ...........................................................................................4, 11

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ...................................................................................................5, 6, 8

*Dillon Boiler Servs., Co. v. Soundview Vermont Holdings, LLC*,
    392 F. Supp. 3d 187 (D. Mass. 2019) .................................................................................4

*Dorel Steel Erection Corp. v. Capco Steel Corp.*,
    392 F. Supp. 2d 110 (D. Mass. 2005) ...............................................................................16

*DSM Research, B.V. v. Verenium Corp.*,
    686 F. Supp. 2d 159 (D. Mass. 2010) ...............................................................................17

*U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.*,
    551 F. Supp. 2d 100 (D. Mass. 2008) .................................................................................2

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
    141 S. Ct. 1017 (2021) ...................................................................................................5, 8

i

*Glowacki-Bishop v. W. & S. Fin. Grp. Inc.*,
578 F. Supp. 3d 124 (D. Mass. 2021) ...................................................................11

*Hepp v. Facebook*,
14 F.4th 204 (3d Cir. 2021) ...................................................................................8

*Hughes v. McMenamon*,
204 F. Supp. 2d 178 (D. Mass. 2002) ...................................................................17

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945) ...............................................................................................8

*Kebb Mgt., Inc. v. Home Depot U.S.A., Inc.*,
59 F. Supp. 3d 283 (D. Mass. 2014) .....................................................................16

*Kuan Chen v. United States Sports Acad., Inc.*,
956 F.3d 45 (1st Cir. 2020) ................................................................................4, 6

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) .................................................................................................12

*Massie v. General Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) ....................................................8, 9

*Motus, LLC v. CarData Consultants Inc.*,
520 F. Supp. 3d 87 (D. Mass. 2021), *aff'd*, 23 F.4th 115 (1st Cir. 2022) ...............4

*Mueller Sys., LLC v. Robert Teti & Itet Corp.*,
199 F. Supp. 3d 270 (D. Mass. 2016) .....................................................................4

*Phillips Exeter Acad. v. Howard Phillips Fund*,
196 F.3d 284 (1st Cir. 1999) ..................................................................................6

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
905 F.3d 1 (1st Cir. 2018) ....................................................................................10

*Shirokov v. Dunlap, Grubb & Weaver, PLLC*,
C.A. No. 10-12043-GAO, 2012 WL 1065578 (D. Mass. Mar. 27, 2012) ...............4

*Tassinari v. Salvation Army Natl. Corp.*,
C.A. No. 21-10806-LTS, 2022 WL 2397542 (D. Mass. June 22, 2022) ................13

*Walden v. Fiore*,
571 U.S. 277 (2014) .........................................................................................8, 11

## **INTRODUCTION**

In this putative class action, the plaintiff Joe Alves ("Alves" or "Plaintiff") contends that the use of common marketing analytics tools on the publicly-accessible website www.goodyear.com violates the Massachusetts Wiretap Act, G.L. c. 272, § 99—a law created to combat organized crime—and the Massachusetts Invasion of Privacy Statute, G.L. c. 214, § 1B— a law designed to address "unreasonable, substantial or serious interference[s]" with privacy. This Court need not reach the merits of these novel claims, however, because it lacks personal jurisdiction over the defendant The Goodyear Tire & Rubber Company ("Goodyear" or "Defendant"). Alternatively, even if the Court concludes there is personal jurisdiction over Goodyear, the Court should transfer this action to the Northern District of Ohio pursuant to the valid forum selection clause in the Terms of Use that apply to Goodyear's website.

Plaintiff bears the burden of establishing this Court's personal jurisdiction over Goodyear. But his complaint comes nowhere close to meeting that burden. This Court cannot constitutionally exercise general jurisdiction over Goodyear because Goodyear is "at home" only in Ohio, where it is incorporated and has its principal place of business. Specific jurisdiction is similarly lacking because Plaintiff does not allege that his claims against Goodyear arise out of or relate to conduct by Goodyear in Massachusetts, and Goodyear has not purposefully availed itself of the privilege of doing business in Massachusetts through its general website, www.goodyear.com, which is accessible from anywhere in the world. Because Plaintiff has failed to establish personal jurisdiction, the complaint should be dismissed.

In the alternative, because Plaintiff's claims arise from his use of Goodyear's website, the valid forum selection clause in the website's Terms of Use—providing for the exclusive jurisdiction of courts in Ohio—necessitates transfer of this action to the Northern District of Ohio.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    The Parties

Plaintiff is a resident of the Commonwealth of Massachusetts.  Complaint (Dkt. No. 1) ("Compl.") ¶ 5.  Goodyear is a corporation organized under the laws of the State of Ohio, with a principal place of business in Ohio.  *Id*. ¶ 6; Declaration of Johnny McIntosh ("McIntosh Decl."), ¶ 4.  Goodyear operates a website at www.goodyear.com which provides information regarding the company and Goodyear's products and services (the "website").  *Id.* ¶ 5.  Goodyear operates this website from Ohio.  *Id*.  Goodyear's marketing team, which operates Goodyear's website and receives session replay recordings, is located in Ohio.  *Id*. ¶ 6.  The website is accessible throughout the United States.  *Id*. ¶ 5.

### B.    Session Replay Code

Plaintiff alleges that Goodyear procures and embeds Session Replay Code on its website, which collects information from users and shares that information to various Session Replay Providers. Compl. ¶¶ 45-46.  Specifically, Plaintiff claims Goodyear has procured and used the Session Replay Code of Microsoft Clarity.  Compl. ¶ 40-42.  However, Goodyear does not "procure" Session Replay Code from Microsoft Clarity, and has not enabled Microsoft Clarity for use on its website.  McIntosh Decl. ¶ 8.  Regardless, Microsoft, owner of the Clarity session replay product, is incorporated in Washington and has its principal place of business in Washington.[2] The only session replay technology Goodyear utilized during the relevant time period was from

---

[1] Goodyear disputes many of the "facts" alleged by Plaintiff, but reproduces those facts here as they appear in the complaint because this Court must accept the facts alleged as true for purposes of this motion to dismiss.  *See, e.g., U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 551 F. Supp. 2d 100, 104 (D. Mass. 2008).  Goodyear expressly reserves its right, if necessary, to contest the truth of these allegations at an appropriate juncture of this litigation.
[2] *See* State of Washington, Corporations and Charities Filing System, Business Information for Microsoft Corporation, available at https://ccfs.sos.wa.gov/#/BusinessSearch/BusinessInformation.

Content Square, Inc. ("Content Square") *Id.* ¶ 9.   Content Square is a Delaware corporation with a principal place of business in New York, New York.[3]

Plaintiff alleges that while in Massachusetts, he visited Goodyear's website using his computer and cell phone to shop for tires in late 2021 and early 2022.  Compl. ¶ 43.  He claims that while visiting Goodyear's website, his "Website Communications" were captured by Session Replay Code embedded on Goodyear's website and subsequently sent to Session Replay Providers.  *Id.*  Plaintiff asserts no other facts of substance to support his claims or tie Goodyear's conduct to Massachusetts.

### C.     This Lawsuit

Based on these allegations, Plaintiff filed his complaint on October 24, 2022, asserting claims against Goodyear for violation of the Massachusetts Wiretap Act, G.L. c. 272, § 99 (Count I), and violation of the Massachusetts Invasion of Privacy Statute, G.L. c. 214, § 1B (Count II). Compl. ¶¶ 64-97.  Both claims are premised on allegations that Goodyear procures and uses Session Replay Code to intercept website visitors' interactions with the website www.goodyear.com without their consent. *See id.*  Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages on behalf of himself and a putative class of "[a]ll natural persons in Massachusetts whose Website Communications were captured in Massachusetts through the use of Session Replay Code embedded in www.goodyear.com." *Id.* ¶ 55; Request for Relief. Accepting each of Plaintiff's allegations as true, Plaintiff fails to establish the necessary contact needed to establish this Court's jurisdiction over Goodyear.

---

[3] *See* State of Delaware, Division of Corporations, Entity Details, available at
https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx.  *See also* State of New York, Department of State, Division of Corporations, Entity Information, available at
https://apps.dos.ny.gov/publicInquiry/EntityDisplay.

## ARGUMENT

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER GOODYEAR

A "plaintiff bears the burden of showing that the Court has authority to exercise jurisdiction over defendants." *Motus, LLC v. CarData Consultants Inc.*, 520 F. Supp. 3d 87, 90 (D. Mass. 2021), *aff'd*, 23 F.4th 115 (1st Cir. 2022). *See also Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 52 (1st Cir. 2020) (plaintiff must show a "likelihood of the existence of each fact necessary to support personal jurisdiction"). A plaintiff "must put forward evidence of specific facts to demonstrate jurisdiction exists" and cannot rely on "unsupported allegations in [the] pleadings." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016). *See also Shirokov v. Dunlap, Grubb & Weaver, PLLC*, C.A. No. 10-12043-GAO, 2012 WL 1065578, at *8 (D. Mass. Mar. 27, 2012) (A plaintiff "must go beyond the pleadings and make affirmative proof to demonstrate the existence of personal jurisdiction."). To meet that burden, Plaintiff must show both that the exercise of personal jurisdiction over Goodyear is proper under the Due Process Clause of the Fourteenth Amendment and the Massachusetts long-arm statute. *Motus, LLC*, 520 F. Supp. at 90; *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 3-4 (1st Cir. 2016). Plaintiff's allegations fail to satisfy either jurisdictional prerequisite.

### A.    Plaintiff's Complaint Fails To Establish That The Exercise Of Personal Jurisdiction Over Goodyear Comports With Due Process

"The exercise of personal jurisdiction may, consistent with due process, be either 'specific or case-linked' or 'general or all purpose.'" *Dillon Boiler Servs., Co. v. Soundview Vermont Holdings, LLC*, 392 F. Supp. 3d 187 (D. Mass. 2019) (citing *Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (1st Cir. 2015)). *See also Mueller Sys., LLC v. Robert Teti & Itet Corp.*, 199 F. Supp. 3d 270, 277-78 (D. Mass. 2016) (plaintiff "must demonstrate that defendants have made sufficient contacts with the forum state to justify the exercise of either specific or general jurisdiction by this

Court.").  Here, Goodyear has insufficient contacts with Massachusetts to support this Court's exercise of either general or specific jurisdiction.

### 1. Goodyear Is Not Subject To General Jurisdiction in Massachusetts

"A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "The 'paradigm' forums in which a corporate defendant is 'at home' … are the corporation's place of incorporation and its principal place of business."  *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (holding that paradigmatic forums "have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable").

Goodyear is "at home" for purposes of general jurisdiction in Ohio—its state of incorporation and principal place of business.  *See* Compl. ¶ 6; McIntosh Decl. ¶ 4.  The exercise of general jurisdiction over Goodyear in Massachusetts thus would violate due process.  Nor is this an "exceptional case" in which general jurisdiction is nevertheless present.  *See Daimler*, 571 U.S. at 139 n.19.  Plaintiff alleges that Goodyear markets and sells its goods and services in Massachusetts, and collects data from website visit sessions initiated by citizens in Massachusetts. Compl. ¶ 8.  But the Supreme Court has expressly rejected "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" holding that "[t]hat formulation . . . is unacceptably grasping." *Daimler*, 571 U.S. at 138 (citation omitted).  Simply stated, "'[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *BNSF Railway Co.*, 137 S. Ct. at 1559 (quoting *Daimler*, 571 U.S. at 139 n.20) (alteration in original).  Plaintiff has not established that Goodyear is subject to general jurisdiction here.

### 2.      Goodyear Is Not Subject To Specific Jurisdiction In Massachusetts

"[S]pecific jurisdiction allows a court to hear a particular case as long as that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Kuan Chen*, 956 F. 3d at 55 (quoting *Baskin Robbins Franchising LLC v. Alpenrose Dairy*, 825 F.3d 28, 35 (1st Cir. 2016)) (internal citations omitted).  The First Circuit applies a three-pronged test to determine whether the exercise of specific jurisdiction conforms to the constitutional limits established by the Due Process Clause.  Specifically, courts in this circuit evaluate:

> (1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable.

*A Corp.*, 812 F.3d at 59 (citation and punctuation omitted).  An affirmative finding "on each of the three elements of the test is required to support a finding of specific jurisdiction." *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999).  Plaintiff cannot satisfy his burden to establish specific personal jurisdiction over Goodyear.

### a.      Plaintiff's Claims Do Not Arise Out Of Or Relate To Goodyear's Alleged Forum-Based Activities

Specific jurisdiction is sometimes referred to as conduct-linked jurisdiction. *Daimer*, 571 U.S. at 122.  Here, the conduct giving rise to Plaintiff's claims occurred outside of Massachusetts.  Plaintiff alleges that Goodyear "procures and directs third-party vendors . . . to embed snippets of JavaScript computer code ('Session Replay Code') on Goodyear's website" and these "third-party vendors (collectively, 'Session Reply Providers') create and deploy the Session Replay Code at Goodyear's request."  Compl. ¶ 1.  The Session Replay Providers then "create a video replay of the user's behavior on the website and provide[] it to Goodyear for analysis." *Id*. ¶ 2.  In short,

Plaintiff's claims in this case "arise out of or relate to" the actions of third parties—the Session Replay Providers—allegedly taken at Goodyear's request.[4]

Plaintiff alleges that "[o]ne such Session Replay Provider that Goodyear procures is Microsoft," and that "Goodyear's procurement and use of Microsoft Clarity's Session Replay Code, and procurement and use of other Session Replay Code through various Session Replay Providers, is a wiretap in violation [of] Massachusetts statutory law." Compl. ¶¶ 40-42. As stated above, Goodyear does not "procure" Session Replay Code from Microsoft Clarity as alleged in the Complaint. McIntosh Decl. ¶ 8. Rather, Goodyear merely utilizes a tag product provided by Microsoft for marketing purposes on Bing, Microsoft's web search engine. *Id*. While Microsoft provides the option for Clarity's session replay technology to be integrated within that tag, Goodyear has not enabled Microsoft Clarity for use on its website. *Id.* In fact, the only session replay technology Goodyear utilized during the relevant time period was from Content Square. *Id*. ¶ 9. Even accepting the Complaint's allegations as true for present purposes, Microsoft is incorporated in the State of Washington and has its principal place of business in Washington. And Content Square is a Delaware Corporation with a principal place of business in New York, New York. Accordingly, Plaintiff's claims "arise out of or relate to" the actions of companies located outside of Massachusetts.

Plaintiff alleges that, while in Massachusetts, he visited www.goodyear.com on his computer and cell phone to shop for tires in late 2021 and early 2022, and that "[d]uring the website visit, Plaintiff's Website Communications[5] were captured by Session Replay Code and sent to various Session Replay Providers." Compl. ¶¶ 43, 46. He complains that the alleged capturing or

---

[4] To the extent Plaintiff alleges that Goodyear marketed and sold tires in Massachusetts either through its website or brick and mortar stores, Compl. ¶¶ 3, 38, Plaintiff's claims in this action have nothing to do with marketing or selling of tires. Plaintiff does not even allege he purchased tires from Goodyear.

[5] "Website Communications" is defined as "the website visitor's electronic communications with the Goodyear website, including their mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time." Compl. ¶ 1.

interception of these communications violated the Massachusetts Wiretap Act and Invasion of Privacy Statute.  But, again, these claims arise out of and relate to technology allegedly procured by an Ohio company (Goodyear), from a Washington company (Microsoft) and Delaware company (Content Square), for use on a nationally accessible website that is operated from Ohio (www.goodyear.com).  McIntosh Decl. ¶ 4-9.

Even if Plaintiff is a citizen of Massachusetts and was physically located in Massachusetts when he visited the website, the Supreme Court has made clear that the plaintiff cannot be the only link between the defendant and the forum.  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  The *defendant's* conduct is what matters; not the plaintiff's (or putative class members') conduct.  *Bristol-Myers Squibb Co. v. Super. Ct. of California*, 137 S.Ct. 1773, 1799 (2017).  Since *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the relationship between the defendant, the forum, and the litigation has been the central concern of the inquiry.  *Daimler*, 571 U.S. at 126.  Some "affiliation" is not enough.  *Ford*, 141 S. Ct. at 1026 ("That does not mean anything goes. . . . the phrase 'relate to' incorporates real limits.").  *Ford* confirms there must be a *strong relationship* among the defendant, the forum, and the litigation.  *See Ford*, 141 S. Ct. at 1028 (analyzing Ford's contacts and concluding "there is a strong 'relationship among the defendant, the forum, and the litigation'—the *'essential foundation'* of specific jurisdiction.").  *Accord Hepp v. Facebook*, 14 F.4th 204, 209 (3d Cir. 2021) (noting "there must be a 'strong relationship among the defendant, the forum, and the litigation.'").

This case is analogous to *Massie v. General Motors Co.*, 2021 WL 2142728, at *1 (E.D. Cal. May 26, 2021).  In *Massie*, two California residents alleged that General Motors ("GM")—a Delaware company with a principal place of business in Michigan—procured session replay software from Decibel Insight, Inc. ("Decibel")—a Delaware corporation with a principal place of business in England.  *Massie*, 2021 WL 2142728, at *1.  When the plaintiffs visited GM's

nationally accessible Chevrolet website, the session replay software allegedly captured their information, in violation of the Federal Wiretap Act and California Invasion of Privacy Act. *Id.* In granting GM's motion to dismiss for lack of personal jurisdiction, the court held that "GM's operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction." *Id*. at *6. The court noted that "Plaintiffs' claims arise from and relate to session recording software allegedly installed on GM's nationally accessible websites, software that GM licensed and used outside California, which allegedly assisted Decibel's interception of interactions with GM's websites." *Id.* The same is true here. Personal jurisdiction is lacking because Plaintiff's claims arise from and relate to Session Replay Code allegedly installed on Goodyear's nationally accessible website, technology that Goodyear licensed and used outside Massachusetts, which allegedly assisted Microsoft's and Content Square's interception of interactions with Goodyear's websites. *See also Chouinard v. Marigot Beach Club and Dive Resort*, C.A. No. 20-10863-MPK, 2021 WL 2256318, at *11-12 (D. Mass. June 3, 2021) (finding plaintiffs failed to satisfy their burden on the relatedness prong where their personal injury claims were unrelated to their interactions with defendant's nationally accessible website).

As there is no connection between Plaintiff's claims and any of Goodyear's activities in Massachusetts, Plaintiff has failed to satisfy the relatedness prong, and the Court need go no further.

### b. Goodyear Did Not Purposefully Direct The Conduct Complained Of To Massachusetts

Even if Plaintiff could satisfy the relatedness prong, he fails the purposeful availment prong of the due process inquiry. Plaintiff makes the conclusory allegation that the alleged statutory violations "resulted from Defendant's purposeful and tortious acts directed towards citizens of Massachusetts while they were located within Massachusetts." Compl. ¶ 8. But there are no facts

alleged to support this.  Absent such supporting facts, Plaintiff surmises that Goodyear must know that Massachusetts residents visit www.goodyear.com, and therefore that the use of session replay technology on this website would capture data from Massachusetts website visitors.  *Id*. ¶¶ 8-9. Goodyear's website is accessible throughout the United States, not just Massachusetts.  McIntosh Decl. ¶ 5.   The First Circuit has been clear that "a website operator does not necessarily purposefully avail itself of the benefits and protections of every state in which its website is accessible."  *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 8 (1st Cir. 2018) (citing *A Corp.*, 812 F.3d at 61 (holding that "the mere availability of a passive website" cannot by itself subject a defendant to personal jurisdiction in the forum); *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 35 (1st Cir. 2010) (noting that the running of a "website that is visible in a forum and that gives information about a company and its products" cannot alone support the exercise of jurisdiction)). "To conclude otherwise . . . could improperly erode important limits on personal jurisdiction over out-of-state defendants."  *A Corp.,* 812 F.3d at 61.  Rather, the focus of the inquiry is on the "defendant's *intentionality*, and the cornerstones of purposeful availment—voluntariness and foreseeability."  *Id.* at 60 (emphasis added).  Like the plaintiff in *A Corp.*, Plaintiff here "has offered only one real contact between Massachusetts and [Goodyear]—[Plaintiff's] use of a website that is accessible from everywhere in the world, including Massachusetts."  *Id.*  That is not enough.[6]

Moreover, Goodyear's relationship with Microsoft and Content Square concerning the use of session replay tools has no connection to Massachusetts, and Goodyear's marketing team, which operates Goodyear's website and receives session replay recordings, is located in Ohio.  McIntosh

---

[6] To the extent Plaintiff argues he suffered here the effects of Goodyear's allegedly wrongful conduct committed elsewhere, that is irrelevant. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. (quoting *Walden*, 571 U.S. at 290).

Decl. ¶ 6.  There are no geographic criterion that affect which website sessions are recorded.  *Id.* ¶ 10.  Goodyear is concerned with improving its website design and user experience, not with any visitor's geographic location.  *Id.* ¶ 7.  In short, Plaintiffs do not (and cannot) allege any intentional conduct designed specifically to target and attract Massachusetts residents to Goodyear's website.  Plaintiff's threadbare allegations that Goodyear could foresee that some website visitors might reside in Massachusetts do not demonstrate purposeful availment.  *See Walden*, 571 U.S. at 289-90.  For this independent reason, Plaintiff's complaint should be dismissed for lack of personal jurisdiction.

### B.      Plaintiff's Complaint Fails To Establish That The Massachusetts Long Arm Statute Authorizes Jurisdiction Over Goodyear

Plaintiff's complaint does not even attempt to establish personal jurisdiction under the Massachusetts long arm statute, G.L. c. 223A, § 3.  Nonetheless, the result here would be the same, even if the Massachusetts long arm statute were analyzed independently.  Although the First Circuit has historically "treated the limits of Massachusetts's long-arm statute as coextensive with those of the Due Process Clause," it has suggested that the statute "might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution."  *Copia Commc'ns, LLC*, 812 F.3d at 4; *see also Glowacki-Bishop v. W. & S. Fin. Grp. Inc.*, 578 F. Supp. 3d 124, 128 (D. Mass. 2021) ("The requirements of the Massachusetts long-arm statute [] are similar to (although potentially more restrictive than) those imposed by the Fourteenth Amendment.").  Regardless of whether the grant of jurisdiction under the long-arm statute is coextensive with or narrower than what is constitutionally permissible, Plaintiff's inability to establish personal jurisdiction under the Due Process Clause is equally fatal to his effort to establish statutory jurisdiction.  *See Brown v. Dash,* C.A. No. 20-10980-FDS, 2020 WL 6806433 at *7 (D. Mass. Nov. 18, 2020) (observing that the First Circuit allows a district court to "sidestep the statutory inquiry and proceed directly to the

constitutional analysis.") (quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002)).

## II.      IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION

As an alternative to dismissal, the Court should transfer this action to the Northern District of Ohio pursuant to the valid forum selection clause in the Terms of Use that apply to Goodyear's website and 28 U.S.C. § 1404(a).

A valid forum-selection clause "represents the parties' agreement as to the most proper forum." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for Western Dist. of Tx.*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).  "In such cases, the plaintiff's choice of forum merits no weight, and 'as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.'"  *Id*.  "[P]roper application of § 1404(a) requires that a forum-selection clause be "given controlling weight in all but the most exceptional cases."  *Id*. at 59–60 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)).

### A.      Plaintiff Agreed To Litigate Disputes In Ohio.

Forum selection clauses are "prima facie valid".  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  A forum selection clause should control "absent a 'strong showing' by the resisting party that the clause is 'unreasonable under the circumstances.'"  *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 48 (1st Cir. 2014) (quoting *M/S Bremen*, 407 U.S. at 10.  *See also M/S Bremen*, 407 U.S. at 15 (explaining that forum selection clauses should be enforced unless there is a strong showing that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.").  Forum selection clauses control in "all but the most exceptional cases."  *Atl. Marine*, 571 U.S. at 60.

Plaintiff's Complaint is based on his use of Goodyear's website, though the extent of that use remains unclear.  Plaintiff specifically references the website by its URL (Compl. at ¶ 1), and his description of Goodyear's conduct within the Complaint's section on personal jurisdiction centers around Goodyear's website (*id*. ¶ 8 (describing Goodyear's alleged conduct as affecting those who "browsed www.goodyear.com").)  Accordingly, because the website is central to the Complaint, the Court can consider the contents of the website at the motion to dismiss stage.  *See Tassinari v. Salvation Army Natl. Corp.*, C.A. No. 21-10806-LTS, 2022 WL 2397542 (D. Mass. June 22, 2022) (looking to contents of defendant's website to determine whether complaint stated a plausible claim under Rule 12(b)(6), where plaintiff incorporated the website into her complaint by "citing to portions of [defendant]'s website"); *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24 (1st Cir. 2000) (considering advertising material outside of the complaint in a motion to dismiss false advertising claim because material was "integral" to assessing the complaint's allegations).

The Terms of Use that apply to Goodyear's website contain a forum selection clause providing that the courts of Ohio have exclusive jurisdiction over any claim arising from use of the website, like Plaintiff's claims here.  *See* McIntosh Decl. ¶ 17 ("You consent and submit to the **sole and exclusive jurisdiction** by and venue in the courts located in the State of Ohio, one of the United States of America, in any legal proceeding directly or indirectly arising out of or relating to the Sites.") (emphasis added).

### 1. Plaintiff Was On Notice Of Goodyear's Terms of Use

When Plaintiff visited the website for the first time, Goodyear immediately presented Plaintiff with a banner, which informed Plaintiff of the website's use of certain technologies and linked to Goodyear's Privacy Policy to "learn more or manage your personal preferences . . ." McIntosh Decl. ¶ 12.

13



Upon clicking the hyperlinked Privacy Policy, Plaintiff would have been directed to a page titled

"Terms, Conditions & Privacy Policy":



*Id*. ¶ 14.  Goodyear's Terms of Use states the following at the top of the page, in all capital letters:

> PLEASE READ THESE TERMS OF USE CAREFULLY. **BY ACCESSING, BROWSING, OR USING THIS WEBSITE, ONLINE SERVICE OR MOBILE APPLICATION, YOU AGREE TO BE BOUND BY THE TERMS DESCRIBED HEREIN** AND ALL TERMS INCORPORATED BY REFERENCE, ALONG WITH ANY AND ALL APPLICABLE LAWS AND REGULATIONS. **IF YOU DO NOT AGREE TO ALL OF THESE TERMS, DO NOT USE THIS WEBSITE, ONLINE SERVICE OR MOBILE APPLICATION.**

*Id*. ¶ 16 (emphasis added).  Under a section titled "APPLICABLE LAWS," with the title bolded, in large font, and in all capital letters, the Terms of Use reads:

> Your use of the Sites will be governed in all respects by the laws of the State of Ohio, USA, without regard to choice of law provisions. You consent and submit to the sole and exclusive jurisdiction by and venue in the courts located in the State of Ohio, one of the United States of America, in any legal proceeding directly or indirectly arising out of or relating to the Sites. By using the Sites, you consent to service of process in accordance with the rules of such courts, irrevocably submit to the jurisdiction of such courts, and waive any objection that you may have to either the jurisdiction or venue of such courts.

*Id*. ¶ 17.

Plaintiff admits that he visited the website.  Compl. ¶ 43.  So, Plaintiff was necessarily confronted with a pop-up banner putting him on notice of the terms that applied to his use of the website.  *See* McIntosh Decl. ¶¶ 12-14.

Thereafter, the Terms of Use are available to Plaintiff and all website visitors via a persistent footer that appears on all of Goodyear's webpages. *Id*. ¶ 15.



**2.    Plaintiff's Claims Are Within The Scope Of The Forum-Selection Provision**

Plaintiff's purported use of the website is undoubtedly governed by Goodyear's Terms of Use, which includes a mandatory forum selection cause clearly designating Ohio as the sole and exclusive forum.  *See id*. ¶ 16 (BY ACCESSING, BROWSING, OR **USING THIS WEBSITE**, ONLINE SERVICE OR MOBILE APPLICATION, **YOU AGREE TO BE BOUND BY THE TERMS DESCRIBED HEREIN** . . .") (bold emphasis added); *see also Dorel Steel Erection Corp. v. Capco Steel Corp.,* 392 F. Supp. 2d 110, 114 (D. Mass. 2005) ("To be mandatory, a forum selection clause must contain language that clearly designates a forum as the exclusive one") (citing *Trans Nat'l Travel, Inc. v. Sun Pac. Int'l Inc.*, 10 F. Supp. 2d 79, 82 (D. Mass. 1998); *Kebb Mgt., Inc. v. Home Depot U.S.A., Inc.,* 59 F. Supp. 3d 283 (D. Mass. 2014) (finding forum selection clause contained mandatory language regarding exclusive jurisdiction and must therefore be enforced).

Because Plaintiff's claims presumably arise from his use of the website—specifically, through some undescribed communication between him and Goodyear via the website— Goodyear's valid forum selection clause necessitates transfer of Plaintiff's case to the Northern

District of Ohio.[7] *See Hughes v. McMenamon*, 204 F. Supp. 2d 178, 181 (D. Mass. 2002) (enforcing forum-selection clause included in the terms and conditions of defendant's website, and granting defendant's motion to dismiss for improper venue).  Accordingly, if the Court declines to dismiss this action entirely for lack of personal jurisdiction, Goodyear respectfully requests transfer of Plaintiff's case to the appropriate and agreed-to forum.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint, or, in the alternative, transfer this action to the Northern District of Ohio.

Respectfully Submitted,

THE GOODYEAR TIRE & RUBBER COMPANY,

By its attorneys,

*/s/ Michael T. Maroney*
Michael T. Maroney (BBO #653476)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
michael.maroney@hklaw.com

Mark S. Melodia (Pro Hac Vice)
Sophie L. Kletzien (Pro Hac Vice)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY  10019
(212) 513-3200
mark.melodia@hklaw.com
sophie.kletzien@hklaw.com

Date:   December 16, 2022

---

[7] The Northern District of Ohio is the appropriate forum, because it is the district in which Goodyear is headquartered. *See DSM Research, B.V. v. Verenium Corp.,* 686 F. Supp. 2d 159 (D. Mass. 2010) (considering defendant's headquarters to find venue proper). *See also* 28 U.S.C. § 1391(c)(2).

## <u>CERTIFICATE OF SERVICE</u>

I, Michael T. Maroney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 16th day of December, 2022.

*/s/ Michael T. Maroney*
Michael T. Maroney

Dated: December 16, 2022