# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOE ALVES, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:22-cv-11820-WGY |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TRANSFER VENUE** |
| GOODYEAR TIRE AND RUBBER COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

ARGUMENT ......................................................................................................................4

I.      THIS COURT HAS PERSONAL JURISDICTION OVER GOODYEAR. ......................4

      A.      The Massachusetts Long-Arm Statute Provides Jurisdiction Over Goodyear.........5

            i.      Plaintiff has satisfied § 3(a) of the Massachusetts Long-Arm Statute.........5

            ii.      Plaintiff has satisfied § 3(c) of the Massachusetts Long-Arm Statute.........6

            iii.      Plaintiff has satisfied § 3(d) of the Massachusetts Long-Arm Statute.........7

                  a.      Goodyear caused tortious injury in the Commonwealth.................8

                  b.      Goodyear regularly solicits business in Massachusetts. .................9

      B.      Consistent with due process, this Court has personal jurisdiction over Goodyear. ..........................................................................................................10

            i.      Plaintiff's claims arise out of or relate to Goodyear's alleged forum-based activities. ................................................................................10

            ii.      Goodyear Purposefully Availed Itself of Massachusetts Jurisdiction. ......11

                  a.      Goodyear's interactive website, which it directed to Massachusetts, created the foreseeability that Goodyear may be subject to Massachusetts' laws..................................................12

                  b.      Plaintiff has established "something more" for purposeful availment......................................................................................14

            iii.      It is reasonable to litigate this case in Massachusetts. ..............................15

II.      GOODYEAR'S FORUM SELECTION CLAUSE IS UNENFORCEABLE .................18

      A.      Goodyear Failed to Reasonably Communicate Its Terms to Plaintiff. .................18

      B.      Plaintiff Did Not Accept the Terms or Forum Selection Clause. .........................19

CONCLUSION..................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Ajemian v. Yahoo!, Inc.*,
83 Mass. App. Ct. 565 (2013) ..................................................................... 18, 19, 20

*Chouinard v. Marigot Beach Club & Dive Resort*,
No. 20-10863-MPK, 2021 WL 2256318 (D. Mass. June 3, 2021) .......................... 11

*Collision Comms'ns, Inc. v. Nokia Sols. & Networks Oy*,
485 F. Supp. 3d 282 (D. Mass. 2020) ................................................................ 7

*Commonwealth v. Cooper*,
100 Mass. App. Ct. 345 (2021) ......................................................................... 8

*Cossart v. United Excel Corp.*,
804 F.3d 13 (1st Cir. 2015) ........................................................................... 5, 6

*Cullinane v. Uber Techs., Inc.*,
893 F.3d 53 (1st Cir. 2018) .......................................................................... 18, 19

*Digital Equip. Corp. v. AltaVista Tech., Inc.*,
960 F. Supp. 456 (D. Mass. 1997) ........................................................... passim

*Edvisors Network*, Inc.,
755 F.Supp. 2d ............................................................................................ 15

*Geis v. Nestlé Waters N. Am., Inc.*,
321 F. Supp. 3d 230 (D. Mass. 2018) .............................................................. 10

*Green v. Cosby*,
99 F. Supp. 3d 223 (D. Mass 2015) ................................................................ 20

*Hamilton v. Young Mgmt., LLC*,
No. CV 20-11307-PBS, 2022 WL 17736915 (D. Mass. Dec. 16, 2022) ......... 4, 10, 11, 16

*Hasbro, Inc. v. Clue Computing, Inc.*,
994 F.Supp. 34 (D. Mass. 1997) ................................................................ passim

*In re Colonial Mortg. Bankers Corp.*,
324 F.3d 12 (1st Cir. 2003) ........................................................................... 13

*In re TelexFree Sec. Litig.*,
  No. 4:14-md-02566-TSH, 2022 WL 3915989 (D. Mass. Aug. 31, 2022) ................................ 5

*Lin v. TipRanks, Ltd.*,
  No. 19-cv-11517, 2019 WL 6211246, (D. Mass. Nov. 21, 2019) ........................................... 14

*Massie v. General Motors Co.*,
  2021 WL 2142728 (E.D. Cal. May 26, 2021)......................................................................... 12

*Merced v. JLG Indus., Inc.*,
  170 F. Supp. 2d 65 (D. Mass. 2001) ....................................................................................... 6

*Morphotrust USA, LLC v. Identrix, LLC,*
  No. 16-cv-10074, 2016 WL 3512131 (D. Mass. June 21, 2016)............................................ 15

*Motus, LLC v. CarData Consultants Inc.*,
  520 F. Supp. 3d 87 (D. Mass. 2021) ................................................................................ 12, 14

*Murphy v. Erwin-Wasey, Inc.,*
  460 F.2d 661 (1st Cir. 1972) ................................................................................................... 7

*N. Light Tech. v. N. Lights Club,*
  97 F. Supp. 2d. 96 (D. Mass. 2000) .................................................................................... 9, 16

*Plixer Int'l, Inc. v. Scrutinizer GmbH,*
  905 F.3d 1 (1st Cir. 2018) ...................................................................................................... 12

*Pritzer v. Yari,*
  42 F.3d 53 (1st Cir. 1994) ...................................................................................................... 16

*Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc.,*
  901 F. Supp. 2d 255 (D. Mass. 2012) ..................................................................................... 6

*SCVNGR, Inc. v. Punchh, Inc.,*
  478 Mass. 324 (2017)............................................................................................................... 5

*Sportschannel New England Ltd. P'ship v. Fancaster, Inc.,*
  No. 09CV11884-NG, 2010 WL 3895177 (D. Mass. Oct. 1, 2010) ......................................... 12

*Venture Tape Corp. v. McGills Glass Warehouse*,
  292 F. Supp. 2d 230 (D. Mass. 2003) ................................................................................ 9, 10

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,*
   952 F. Supp. 1119 (W.D. Pa. 1997) ................................................................... 12, 13

**Statutes**

28 U.S.C. § 1404(a) .............................................................................................. 2, 18, 20

G. L. c. 223A, § 3 .............................................................................................................. 5

G. L. c. 223A, § 3(d) ................................................................................................ 5, 8, 9, 10

G.L. c. 223, § 3(c) ............................................................................................................. 5

G.L. c. 223A, § 3(a) ..................................................................................................... 5, 6

G.L. c. 223A, § 3(c) ........................................................................................................ 7

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 1

**Other Authorities**

Restatement (Second) of Conflict Laws § 145 (1971) .................................................... 8

Plaintiff Joe Alves ("Plaintiff" or "Alves") submits this Memorandum of Law in Opposition to Defendant Goodyear Tire & Rubber Company's ("Goodyear" or Defendant") Motion to Dismiss Plaintiff's Complaint ("Motion").  Def. Mem., ECF 33.

## INTRODUCTION

As Plaintiff alleges, Goodyear secretly records the personal and private electronic communications of Massachusetts visitors to its website, goodyear.com, using an undisclosed application called "Session Replay."  Class Action Complaint ("CAC"), ¶ 1.  Through Session Replay, Goodyear records and replays each website visitor's every move while visiting Goodyear's website, from anywhere and in real-time.  *Id.* ¶ 1-2.  Goodyear's use of this technology violates its users' privacy expectations and Massachusetts' privacy and wiretap laws.  *Id.* ¶¶ 3-4.

Goodyear seeks dismissal of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1), arguing the Court lacks personal jurisdiction because: (1) Plaintiff's claims purportedly do not arise out of Goodyear's conduct within Massachusetts, even though Plaintiff resides in Massachusetts and Goodyear secretly recorded him there; and (2)  Goodyear did not purposefully avail itself of jurisdiction in Massachusetts despite directing its website to users and selling it products and services there.  Def. Mem., ECF No. 33, at 1.  Massachusetts, however, has the only material and substantial connection to Plaintiff's claims, and Goodyear purposefully availed itself of jurisdiction here because it voluntarily directs its website to Massachusetts residents, such as Plaintiff, and knowingly records their activities within Massachusetts without consent.  CAC, ¶¶ 8-9.  Moreover, Goodyear will not face a significant burden or expense litigating in this District, nor has Goodyear even attempted to assert any burden.  Accordingly, Plaintiff's allegations are sufficient to establish personal jurisdiction in Massachusetts and the Court should deny Goodyear's Motion.

For similar reasons, this Court should also deny Goodyear's request to transfer this action to Ohio pursuant to 28 U.S.C. § 1404(a). The forum selection clause in Defendant's Terms of Use ("Terms") is not enforceable, as it was not reasonably communicated or assented to by Plaintiff. Nor do the facts support a transfer to Ohio. Massachusetts maintains a strong interest in protecting the privacy interests of its residents who are tortiously injured within its jurisdictional limits, and Plaintiff's choice of forum always weighs against a § 1404(a) transfer. Thus, this case should continue in Massachusetts.

## FACTUAL BACKGROUND

This is a class action brought against Goodyear for violating Massachusetts' wiretapping laws by recording Plaintiff's personal and private electronic communications on its website, www.goodyear.com, without his consent. CAC, ¶ 1. Plaintiff brought this class action on behalf of himself and a proposed Class of Massachusetts residents, all of whom Goodyear surreptitiously recorded while they visited Goodyear's website.

Goodyear procures and directs third-party vendors, such as Microsoft Corporation ("Session Replay Providers") to embed snippets of JavaScript computer code ("Session Replay Code") on Goodyear's website. *Id.* This code is then deployed on each website visitor's internet browser to intercept and record the visitor's electronic activities on the Goodyear website. *Id.* Unlike other online advertising tools, Session Replay Code allows a website to capture and record nearly every action a website visitor takes while visiting the website, including action that reveals the visitor's personal or private sensitive data, sometimes even when the visitor does not intend to submit the data to the website operator, or has not finished submitting the data to the website operator. *Id.* ¶ 23. The events and data captured by Session Replay Code can include all mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, and numerous other

2

forms of a user's navigation and interaction through the website. *Id.* ¶ 25. Session Replay Code does not necessarily anonymize user sessions, either. *Id.* ¶ 30. Identifying information will become known and visible to the Session Replay Provider and website owner, and often Session Replay Providers create fingerprints that are unique to a particular user's combination of computer and browser settings, screen configuration, and other detectable information. *Id.* ¶ 31, 34.

Goodyear admits both that it "utilizes session replay technology" on its website, (Declaration of Johnny McIntosh, ECF 34 ("McIntosh Decl.") ¶ 7), and that it "receives session replay recordings." *Id.* ¶ 6. Defendant further concedes that it does not disclose its use of Session Replay Code or otherwise offer website visitors an opportunity to consent to the recordings. McIntosh ¶ 12.[1] Plaintiff Alves visited Goodyear's website and, like other visitors, had his activity surreptitiously recorded and his privacy violated. *Id.* ¶ 2. At all relevant times, Defendant knew that it would collect information from Plaintiff and other Massachusetts residents while they browsed or interacted with www.goodyear.com. *Id.* ¶¶ 8-9. Indeed, both desktop and mobile versions of Goodyear's website allow Plaintiff and other users to search for nearby stores by providing their "current location," as furnished by the location-determining tools of the device the user is using or by the user's IP address. *Id.* This means Goodyear is continuously made aware that its website is being visited by people located in Massachusetts, and that website visitors, such as Plaintiff, are being wiretapped in violation of Massachusetts statutory and common law. *Id.*

After intercepting and capturing Plaintiff's Website Communications, Goodyear and the Session Replay Providers use those Website Communications to recreate website visitors' entire

---

[1] Goodyear does not argue that it disclosed its use of Session Replay code to Plaintiff or offered Plaintiff or other website visitors an opportunity to consent to the recordings. Rather, the McIntosh Decl. ¶ 12 states that Goodyear tells visitors that it "uses cookies." Session replay technologies and the use of cookies are distinct.

visit to www.goodyear.com, create a video replay of the user's behavior, analyze that behavior, and, as Plaintiff alleges, use that information for marketing and sales. *Id.* ¶¶ 2, 13. Goodyear's procurement of the Session Replay Providers to secretly deploy the Session Replay Code is the electronic equivalent of "looking over the shoulder" of each visitor to the Goodyear website for the entire duration of their website interaction and is a wiretap. *Id.* at ¶ 2. This wiretapping by Session Replay Code is ongoing and continues to present legitimate harm to website visitors, all while Goodyear benefits from the consumer data to shape products, solutions, and the buyer experience--- which increases Goodyear's ability to generate profits. *Id.* ¶¶ 13- 15, 50, 81, 95. Goodyear's conduct violates the Massachusetts Wiretapping Act, Mass. Gen. Laws ch. 272, §99, the Massachusetts Invasion of Privacy Statute, Mass. Gen. Laws ch. 214, §1, and constitutes a general invasion of the privacy rights of website visitors, including Plaintiff. *Id.* ¶ 3. And likewise, these facts establish personal jurisdiction over Goodyear in Massachusetts.

## ARGUMENT

## I.      THIS COURT HAS PERSONAL JURISDICTION OVER GOODYEAR.

This Court has personal jurisdiction over Goodyear because Plaintiff has made a prima facie showing that the: 1) Massachusetts Long-Arm Statute provides for personal jurisdiction; and 2) assertion of specific personal jurisdiction is consistent with constitutional due process (*i.e.* there is either general or specific jurisdiction over the defendant). *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34, 39 (D. Mass. 1997); *see also Hamilton v. Young Mgmt., LLC,* No. CV 20-11307-PBS, 2022 WL 17736915, at *2-3 (D. Mass. Dec. 16, 2022) (applying the prima facie standard to personal jurisdiction inquiries where there has been no evidentiary hearing); *Digital Equip. Corp. v. AltaVista Tech., Inc.*, 960 F. Supp. 456, 463-64 (D. Mass. 1997) (finding the prima facie standard particularly appropriate where the facts that support personal jurisdiction are not in dispute).

### A.      The Massachusetts Long-Arm Statute Provides Jurisdiction Over Goodyear.

This Court has specific personal jurisdiction over Goodyear pursuant to the Massachusetts Long-Arm Statute.  The Massachusetts's Long-Arm Statute, G. L. c. 223A, § 3, provides that, "[a] court may exercise personal jurisdiction over a person ... as to a cause of action in law or equity arising from the person's" one or more specific acts or omissions, as enumerated in the statute. There are eight specific grounds on which a nonresident defendant may be subjected to personal jurisdiction in Massachusetts.  *SCVNGR, Inc. v. Punchh, Inc.,* 478 Mass. 324, 328 (2017).  At least three of them extend this Court's jurisdiction over Goodyear based on the acts alleged: (1) G.L. c. 223A, § 3(a); (2) G.L. c. 223, § 3(c); and (3) G. L. c. 223A, § 3(d).    Plaintiff's allegations satisfy each of these and establish this Court's personal jurisdiction over Goodyear.[2]

### i.      Plaintiff has satisfied § 3(a) of the Massachusetts Long-Arm Statute.

Pursuant to § 3(a) of the Massachusetts' Long-Arm Statute, this Court has personal jurisdiction over Goodyear because Plaintiff's cause of action arises from Goodyear's unlawful acts in the Commonwealth.   Section 3(a) provides that, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's…transacting any business in this commonwealth[.]" G.L. c. 223A, § 3(a). That is precisely what Plaintiff alleges here.

To satisfy § 3(a), Plaintiff must demonstrate a defendant "transacted business" in the forum state and "the transacted business was but-for the cause of the alleged injury."  *Cossart v. United*

---

[2] Defendant asserts that Plaintiff's Complaint does not attempt to establish personal jurisdiction under the Massachusetts Long-Arm Statute. Def. Mem., at 11.  Plaintiff is not, however, required to plead every section of law that affords the Court with personal jurisdiction.  *See generally In re TelexFree Sec. Litig.*, No. 4:14-md-02566-TSH, 2022 WL 3915989, at * 14 (D. Mass. Aug. 31, 2022).  Rather, fact allegations identifying the basis for personal jurisdiction, as Plaintiff has alleged, are sufficient.  *Id.*

*Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015).   Massachusetts courts have construed the "transacted business" prong broadly.   *Merced v. JLG Indus., Inc.*, 170 F. Supp. 2d 65, 70 (D. Mass. 2001). Generally, to transact business, a defendant must have "attempted to participate in the Commonwealth's economic life.   *Cossart*, 804 F.3d at 18.   "The purposeful and successful solicitation of business" from Massachusetts residents, by a defendant or its agent, will satisfy this requirement.   *Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc.,* 901 F. Supp. 2d 255, 261 (D. Mass. 2012) (finding defendant "need not have any physical presence in Massachusetts" to extend personal jurisdiction); *see also Digital,* 960 F. Supp. at 465 (finding jurisdiction under § 3(a) where defendant had successfully made three sales to Massachusetts residents through its website).

Here, Plaintiff alleges that Goodyear deliberately offered and directed its interactive website to Massachusetts residents to advertise and successfully sell products and services there. CAC, ¶ 8.  Goodyear also collects consumer data from Massachusetts residents (with the Session Replay Code) and uses it to assess and improve its ability to target Massachusetts consumers with goods and services and increase its profits within the forum.   Plaintiff's claims arise directly from Goodyear's conduct related to its website, consumer behavior tracking, and data collection, which Plaintiff alleges caused him and the putative Class members' injuries.   Thus, Plaintiff has satisfied § 3(a) and establishes personal jurisdiction.

### ii.     Plaintiff has satisfied § 3(c) of the Massachusetts Long-Arm Statute.

Pursuant to § 3(c) of the Massachusetts' Long-Arm Statute, this Court has personal jurisdiction over Goodyear because Goodyear intentionally caused tortious injury through both acts and an omission in Massachusetts.   Section 3(c) of the Massachusetts' Long-Arm Statute provides that, "[a] court may exercise personal jurisdiction over a person, who acts directly or by

an agent, as to a cause of action in law or equity arising from the person's… causing tortious injury by an act or omission in this commonwealth[.]" G.L. c. 223A, § 3(c).  This section requires some allegation that a defendant did some act in the Commonwealth that caused the plaintiff harm. *Collision Comms'ns, Inc. v. Nokia Sols. & Networks Oy*, 485 F. Supp. 3d 282, 293 (D. Mass. 2020) (reasoning that intent to cause harm within the Commonwealth may satisfy the act required for § 3(c) jurisdiction); *see also Murphy v. Erwin-Wasey, Inc.,* 460 F.2d 661, 664 (1st Cir. 1972) (finding a statement originating outside of Massachusetts that was sent via mail to Massachusetts could be the basis for a misrepresentation claim within the forum).

Goodyear directed and offered its website to Massachusetts residents, including Plaintiff (act # 1,) without first disclosing the Session Replay Code or Goodyear's ability and intent to record Massachusetts residents' Website Communications (omission #1).   Then, Goodyear actually recorded Plaintiff and the Class's Website Communications, either directly or by its agent, in Massachusetts (act #2).    Through these acts and this omission, Goodyear invaded Plaintiff's and the putative Class members' privacy and caused them injuries, including those related to the exposure of their personal data.  CAC, ¶¶ 59, 62, 80.  This satisfies § 3(c) of the Long-Arm Statute and extends personal jurisdiction over Goodyear.

### iii.    Plaintiff has satisfied § 3(d) of the Massachusetts Long-Arm Statute.

Pursuant to § 3(d) of the Massachusetts' Long-Arm Statute, this Court has personal jurisdiction even if Goodyear's relevant actions occurred outside of Massachusetts because Goodyear regularly solicits and engages in business here and caused injury within Massachusetts' borders.  Section 3(d) provides Massachusetts courts:

> personal jurisdiction over a person who … causing tortious injury in the commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or

7

> derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .

G.L. c. 223A, § 3(d).  Thus, Plaintiff may also establish personal jurisdiction over Goodyear for its acts and omissions *outside* the Commonwealth by demonstrating that Goodyear: (1) caused tortious injury in the Commonwealth; and (2) regularly does or solicits business or engages in any other persistent course of conduct in the Commonwealth; or (3) derived substantial revenue from goods used or consumed or services rendered in the Commonwealth.  *Id.* Plaintiff's allegations plausibly demonstrate each of these prongs.

### a.   **Goodyear caused tortious injury in the Commonwealth.**

First, Goodyear caused Plaintiff's and the putative Class members' tortious injury in Massachusetts.  When, like here, an invasion of privacy involves an intrusion upon the plaintiff's solitude, the place of invasion and the location of the injury are the same.  Restatement (Second) of Conflict Laws § 145 (1971); *see also generally Commonwealth v. Cooper*, 100 Mass. App. Ct. 345, 352 (2021) (holding that looking over someone's shoulder while they are in their home causes injury because it is "invading the privacy of a person[] precisely where they are most entitled to feel secure—where they live and rest").  Here, Plaintiff alleges Goodyear intruded upon his privacy in Massachusetts while he was browsing goodyear.com on his personal devices.  CAC, ¶¶ 5, 8-9 ("conduct giving rise to Plaintiff's claims occurred in Massachusetts," "[t]he privacy violations complained of herein resulted from Defendant's purposeful and tortious acts directed towards citizens of Massachusetts while they were located in Massachusetts," "Defendant knew its practices would directly result in collection of information from Massachusetts citizens while those citizens browsed www.goodyear.com.")  Goodyear's entry into the Massachusetts' economic market, through its website and other business offerings, caused harm to Plaintiff in the

Commonwealth.  There is no other logical location for Plaintiff's injuries.  Thus, the injury occurred in Massachusetts.

### b.      Goodyear regularly solicits business in Massachusetts.

*Second*, Plaintiff may satisfy § 3(d) by alleging Goodyear regularly solicits business in Massachusetts via a nationwide website that actively solicits business from Massachusetts residents.  *See Venture Tape Corp. v. McGills Glass Warehouse*, 292 F. Supp. 2d 230, 231-232 (D. Mass. 2003) (holding the "regular solicitation" prong of § 3(d) was met because defendant maintained an "interactive website that is continuously available to Massachusetts residents" and finding a website to be interactive if "users located anywhere in the country (or, indeed, the world) may use it to place orders, to e-mail the company, or subscribe to its mailing list"); s*ee also N. Light Tech. v. N. Lights Club*, 97 F. Supp. 2d. 96, 105 (D. Mass. 2000), *aff'd on other grounds,* 236 F.3d 57 (1st Cir. 2001) (finding Defendants had regularly solicited business in Massachusetts where this "web site operates twenty-four hours a day, seven days a week" … and "Defendant attempted to do business with the Plaintiff."); *Digital,* 960 F. Supp. at 467 (holding that a defendant's website, which was continuously accessible to Massachusetts residents "plainly solicits business in Massachusetts.").

Here, Goodyear solicits business from Massachusetts residents through its interactive website, which is continuously available to and actively solicits product sales and vehicle services from Massachusetts residents.  CAC, ¶¶ 8-9.  Goodyear uses the website to advertise and promote its products and services and actually sells those products and services to Massachusetts customers via the website.  CAC, ¶¶ 8-9, 39, 47-54.  Goodyear.com is also interactive because it allows website visitors to communicate with the company in real-time.  *Id.* ¶ 1, 9. Thus, goodyear.com is

sufficiently interactive to establish regular business solicitation in Massachusetts and Plaintiff satisfies the regular solicitation requisite of § 3(d).

### B.   Consistent with due process, this Court has personal jurisdiction over Goodyear.

This Court has specific personal jurisdiction over Goodyear, consistent with Constitutional due process, because Goodyear entered Massachusetts to record consumers' online behavior and solicit customers—and it successfully did both.   To establish specific personal jurisdiction over an out-of-state defendant, a defendant must have "minimum contacts" with Massachusetts so that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Hasbro*, 994 F. Supp. at 44 (internal citations omitted).   Minimum contacts exist if the three factors of relatedness, purposeful availment, and reasonableness are fulfilled.   *Venture,* 292 F. Supp. 2d at 232.   Plaintiff's Complaint sufficiently alleges each of the "minimum contacts" factors and litigating in Massachusetts will not offend notions of fair play and substantial justice.

### i.   Plaintiff's claims arise out of or relate to Goodyear's alleged forum-based activities.

Plaintiff's claims arise directly out of and relate to Goodyear's activity in Massachusetts.   To establish relatedness, Plaintiff must allege a demonstrable nexus between his claims and the defendant's forum-based activities.   *See Hasbro*, 994 F. Supp. at 44 (finding relatedness prong met where website was continuously accessible by Massachusetts residents, defendant advertised in Massachusetts through its' website, and injury occurred in the forum).   The court's analysis of relatedness is akin to the "arising from" examination under the Long-Arm Statute.   *Geis v. Nestlé Waters N. Am., Inc*., 321 F. Supp. 3d 230, 239 (D. Mass. 2018).   It is also both "flexible" and "relaxed" if the defendant's conduct in Massachusetts forms "an important, or at least material, element of proof in the plaintiff's case."   *Hamilton*, 2022 WL 17736915, at * 5.

Here, Goodyear's interactive website, which allowed Plaintiff and other Massachusetts customers to directly purchase goods and services and exchange communications with Goodyear, (CAC, ¶¶ 1, 8-9), was directed at and continually accessible to Massachusetts' residents, including Plaintiff. The tortious injury (the invasion of privacy and recording without consent) occurred when Plaintiff visited the website in Massachusetts and could not have occurred otherwise. As a result, Plaintiff has satisfied the relaxed "arising from" standard for relatedness.

Goodyear went further, though. Through its' website, Goodyear knowingly recorded Plaintiff's and other Massachusetts residents' private online behavior, created a physical reiteration of that behavior, and then used that information to increase revenue. *Id.*, ¶¶ 8-9, 13. Goodyear aimed these intentional acts at Massachusetts residents to solicit and increase business in Massachusetts at the expense of the Massachusetts residents' privacy. These facts clearly satisfy the relatedness prong of the due process analysis and likely satisfy a higher, "but-for" standard in support of personal jurisdiction.

### ii.   Goodyear Purposefully Availed Itself of Massachusetts Jurisdiction.

Goodyear purposefully availed itself of Massachusetts jurisdiction by marketing itself to and interacting with Massachusetts customers and using its website to secretly and intentionally record Massachusetts customers within the Commonwealth. CAC, ¶¶ 8-9. For jurisdiction to attach, Goodyear's contacts with Massachusetts must be voluntary, meaning they were the result of Defendant's choice and foreseeable, such that it should reasonably anticipate being hauled into court in Massachusetts. *Chouinard v. Marigot Beach Club & Dive Resort,* No. 20-10863-MPK, 2021 WL 2256318, at *9 (D. Mass. June 3, 2021); *see also Hamilton*, 2022 WL 1773915, at *6 (holding plaintiffs established defendant's purposeful availment because it voluntarily sent "dozens of advertisements into the Commonwealth annually in an attempt to drum up business" in Massachusetts); *Digital*, 960 F. Supp. at 470 (finding defendant should expect to be hauled into

court within any jurisdiction they cause harm).[34]  When jurisdiction is premised on a defendant's interaction with the forum state through its website, like here, courts also require "something more" than just a nationally available website.  *Motus, LLC v. CarData Consultants Inc.*, 520 F. Supp. 3d 87, 92 (D. Mass. 2021).  Plaintiff eminently satisfies the voluntary, foreseeable, and something more requirements and demonstrates Goodyear's purposeful availment of the laws of Massachusetts.

> ### a. Goodyear's interactive website, which it directed to Massachusetts, created the foreseeability that Goodyear may be subject to Massachusetts' laws.

Goodyear implemented an interactive website that recorded users' online communications and behaviors and then aimed that website at Massachusetts' residents.  When analyzing whether a company's website activities within a forum establish personal jurisdictional, most courts consider the approach set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).  *Sportschannel New England Ltd. P'ship v. Fancaster, Inc.*, No. 09CV11884-NG, 2010 WL 3895177, at *5 (D. Mass. Oct. 1, 2010).  Under *Zippo*, courts analyze website activities under

---

[3] Goodyear argues this case is analogous with *Massie v. General Motors Co.*, 2021 WL 2142728, at *1 (E.D. Cal. May 26, 2021), an unpublished, non-precedential California case that held a defendant's passive website, which had simply "posted information on an Internet Web site" that was accessible to users in foreign jurisdictions did not support personal jurisdiction. *Id.* at *8. *Massie* is distinguishable because, unlike in *Massie*, Plaintiff here plausibly alleged goodyear.com is an interactive website, intentionally directed at Massachusetts residents, that solicited actual, direct sales from Massachusetts residents, and offered residents' the ability to schedule services provided by Goodyear at one of its many service locations in Massachusetts.  *Id.;* CAC, ¶¶ 8-9 (*see infra* fn. 5).  Also, Plaintiff also alleged Goodyear knew it was soliciting and recording Plaintiff and the Class in Massachusetts.  *Massie*, therefore, is entirely inapposite.

[4] Goodyear argues that "a website operator does not necessarily purposefully avail itself of the benefits and protections of every state in which its website is accessible." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 8 (1st Cir. 2018).  *Plixer* supports jurisdiction over Goodyear. There, the court affirmed the district court's ruling that the German company supported the exercise of specific jurisdiction because the website generated a regular flow or course of sales to residents of the United States.  *Id.* at 10.  The same is true here because Goodyear uses its website in the regular course of business to sell goods and services to Massachusetts residents.

a three-part sliding scale where the "likelihood of personal jurisdiction is directly proportionate to the level of interactivity of the website." *Id.* The scale operates as follows:

> At one end of the spectrum, personal jurisdiction is clearly established where a defendant conducts regular business over the internet, for example by entering into contracts with foreign users to transmit files to their home computers for fee. At the other end of the spectrum are passive websites that do no more than share information…And in the middle of the spectrum are interactive websites where a user exchanges information with a host computer.

*Id.* Under the *Zippo* analysis, commercial internet storefronts, like Goodyear.com, that allow customers to directly purchase goods, exchange communications with the defendant, and create online accounts are sufficient support the exercise of personal jurisdiction. *See Zippo* 952 F. Supp. at 1124 ("[W]hen an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. Different results should not be reached simply because business is conducted over the Internet.") (internal citations omitted). Courts may also consider whether defendant took any action to avoid activity in Massachusetts, such as removing advertisements or storefronts from the forum. That is certainly not the case here, where Goodyear established service locations in Massachusetts and directed Massachusetts residents to them via its website (www.goodyear.com).[5] *See Hasbro*, 994 F. Supp. at 45 (holding the defendant purposefully directed its website, and subsequently its advertising, to all states and took no action to avoid advertising in Massachusetts).

Goodyear.com is, therefore, in the most interactive category described in *Zippo* because it conducts regular business with Massachusetts customers through its website, offering online customers full access to its products and services and the option to purchase products and schedule

---

[5] As a matter of public record, the Court may take judicial notice of the fact Goodyear has service locations in Massachusetts and does not have service locations in all fifty states, as identified by www.goodyear.com. *In re Colonial Mortg. Bankers Corp.,* 324 F.3d 12, 16 (1st Cir. 2003)

in-person services directly from the website.  CAC, ¶¶ 8-9.  The website also encourages its users, including those located in Massachusetts, to communicate with Goodyear through the site and provides assistance to users searching for nearby Goodyear brick and mortar stores.  *Id.* Additionally, Goodyear knew that Massachusetts residents visited its website and as a result, that the site may cause harm in Massachusetts.  CAC, ¶¶ 8-9.  Goodyear could have avoided Massachusetts, and liability for its unlawful recording, but it chose to include the forum in its website's reach (and recordings).  Goodyear.com's deliberate interactivity with Massachusetts residents and specific targeting of Massachusetts business firmly establishes Goodyear's choice to conduct business in Massachusetts (voluntariness) and the likelihood, based upon the volume of business and its' unlawful activity in the Commonwealth, that it may be subject to the jurisdiction of Massachusetts courts (foreseeability).  Therefore, Plaintiff has sufficiently pled Goodyear's voluntary conduct and the foreseeability factors to establish purposeful availment and personal jurisdiction.

> **b.    Plaintiff has established "something more" for purposeful availment.**

Goodyear's website, as described herein, satisfies the "something more" standard a nationally available website must meet to extend personal jurisdiction over an out-of-state website owner.  *See Lin v. TipRanks, Ltd*., No. 19-cv-11517, 2019 WL 6211246, at *5, (D. Mass. Nov. 21, 2019).  To determine what "more" is required, courts focus on whether the defendant actually and purposefully conducted transactions with forum state residents through its website, targeted residents in the forum, or knowingly made substantial revenue from forum state residents.  *Motus*, 520 F. Supp. 3d at 93 (internal citations omitted).

In *Motus*, the court held the "something more" element is satisfied by a defendant's intentional conduct calculated to cause injury in Massachusetts.  *Id.*  This intentional conduct

occurs if the defendant knew of plaintiff's whereabouts when it engaged in the tortious conduct. *Id; see also Morphotrust USA, LLC v. Identrix, LLC,* No. 16-cv-10074, 2016 WL 3512131, at * 5 (D. Mass. June 21, 2016) (finding where a defendant knows the target of its allegedly wrongful conduct is located in Massachusetts, the purposeful availment prong is satisfied); *Edvisors Network*, Inc., 755 F. Supp. 2d at 284 ("Given Educational Advisors' knowledge that any allegedly infringing conduct would have an especially harmful effect on Edvisors in Massachusetts, and its efforts to market its services to residents of Massachusetts through the use of an interactive website, this court finds that the purposeful availment prong of the jurisdictional analysis has been met.").

Plaintiff has plausibly alleged, and Goodyear does not dispute, that it maintains an interactive website, through which it solicits business from and makes sales to Massachusetts residents.  CAC, ¶¶ 8-9.  Plaintiff has also demonstrated that Goodyear knew or should have known at all relevant times that Massachusetts' residents access its website while within the Commonwealth. *Id.*, ¶ 8-9.  Even with that knowledge, Goodyear captured and recorded Plaintiff's and Massachusetts residents' Website Sessions including cursor movements, text submission, and other user behavior, without their consent and in violation of Massachusetts law. *Id.*, ¶¶ 8-9, 79. Notably, Goodyear's recordings  also included the IP address and location of such individuals. *Id.*, ¶ 9.  Thus, Goodyear intended to cause injury through its website in Massachusetts and that is sufficient to establish "something more" for personal jurisdiction over the owner of a nationally accessible website.  Taken together, there is no doubt that Goodyear purposefully availed itself of Massachusetts laws sufficient to confer jurisdiction.

### iii.    It is reasonable to litigate this case in Massachusetts.

Goodyear cannot (and does not try to) establish that it would be unreasonable to litigate this case in Massachusetts.  To determine reasonableness, this Court must consider five factors:

(1) the defendant's burden in appearing in the court; (2) the forum state's interest in hearing the suit; (3) the plaintiff's convenience and interest in effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all interested states in promoting substantive social policies.

*Hasbro*, 994 F. Supp. at 45.  The first factor is only relevant if Goodyear "can demonstrate some kind of special or unusual burden."  *Digital*, 960 F. Supp at 471.  Litigating in another state and travel, even over long distances, does not constitute a sufficient burden.  *Pritzer v. Yari,* 42 F.3d 53, 64 (1st Cir. 1994); *N. Light*, 97 F. Supp. 2d at 107; *Digital*, 960 F. Supp. at 471.  Here, Goodyear has not asserted, let alone demonstrated, a burden that would be imposed by litigating in Massachusetts.  Thus, the first factor favors continuing this litigation in Massachusetts.

The second factor, Massachusetts' interest in this lawsuit, favors finding personal jurisdiction over Goodyear.  The relevant issues here are: (1) Plaintiff's location (Massachusetts); (2) Plaintiff being subjected to Massachusetts' law; (3) location of the injury (Massachusetts)[6]; (4) Massachusetts' interest in protecting its residents, including Plaintiff, by preventing companies from violating Massachusetts' statutes while doing business within the Commonwealth; and (5) Massachusetts' interest in protecting the privacy of its citizens.  *See N. Light*, 97 F .Supp. 2d at 107; *Hasbro*, 994 F. Supp. at 45; *Digital*, 960 F. Supp. at 471.  Plaintiffs' allegations squarely satisfy issues (1), (2), and (3), implicating Massachusetts' interest in keeping this litigation at home.  In support of factors four and five here, Massachusetts also has a strong interest in protecting its residents from unlawful business practices and invasions of privacy. *See Hamilton*, 2022 WL 1773915, at *6 (finding Massachusetts has an "interest in protecting its citizens from out-of-state providers of goods and services").  Taken together, these factors support Massachusetts interest in this lawsuit and favors personal jurisdiction over Goodyear.

---

[6] *See supra* Section I(A)(iii)(a).

For the third factor, Plaintiff's interest in litigating the case in Massachusetts, the Court should defer to the Plaintiff's choice of a Massachusetts forum. *Digital*, 960 F. Supp. at 471. Massachusetts is more convenient for Plaintiff and his evidence is located here. This factor favors continuing the litigation in Massachusetts.

The fourth factor, determining the judicial system's interest in obtaining the most effective resolution of the controversy, favors Massachusetts. Generally, courts consider this factor to be a "wash." *Hasbro*, 994 F. Supp. at 45-45. In *Hasbro*, however, the court reasoned that if the case was dismissed for lack of personal jurisdiction, the parties would not be able to resolve the dispute without judicial intervention in some other forum. 994 F. Supp. at 45-45. Thus, the *Hasbro* court concluded, like the Court should here, that it was more efficient to continue the case in Massachusetts because it had already begun here. *Id.* at 46. Like *Hasbro*, this litigation will likely continue, if dismissed here, in another forum. It would be more efficient (and fairer to the Massachusetts-only proposed Class/victims of Goodyear's privacy violations) to continue litigating here rather than beginning anew somewhere else.

Finally, the fifth factor, which focuses on policy issues raised by asserting personal jurisdiction over a non-resident, weighs in favor of continuing litigation in Massachusetts. Goodyear cannot insulate itself from personal jurisdiction in Massachusetts simply because it made its website available nationwide, especially because its availability in Massachusetts was not incidental. It was purposeful and Goodyear used the website to sell goods and services to Massachusetts residents, and to surreptitiously record those residents in the process. *See Digital*, 960 F. Supp. at 471 (finding it "troublesome to allow those who conduct business on the Web to insulate themselves against jurisdiction in every state, except the state (if any) where they are physically located."). And stated again, it is Massachusetts' policy and in its interest to protect the

privacy of its citizens.  *Hamilton*, 2022 WL 1773915, at *6.  Plaintiff and *all* putative Class members are Massachusetts residents and should be able to use Massachusetts courts to adjudicate wrongs against them that occurred within Massachusetts.  Thus, taken together, this and *all* the factors favor continuing this case in Massachusetts.

## II.   GOODYEAR'S FORUM SELECTION CLAUSE IS UNENFORCEABLE

Goodyear alternatively seeks transfer to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a) based on the forum selection clause in its Terms of Use ("Terms").  Def. Mem., at 12. Courts use a two-step inquiry to assess the enforceability of a forum selection clause in online agreements.  *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574–75 (2013), aff'd, 84 N.E.3d 766 (Mass. 2017).  "The first inquiry is whether the contract terms were reasonably communicated to the plaintiffs.  The second is whether the record shows that those terms were accepted and, if so, the manner of acceptance."  *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62 (1st Cir. 2018).  The party seeking to enforce the forum selection clause (here, Goodyear) has the burden to show that the terms were reasonably communicated and accepted.  *Id.*  Goodyear has failed to establish any of these requisites.

### A.   Goodyear Failed to Reasonably Communicate Its Terms to Plaintiff.

Goodyear did not reasonably communicate its Terms to Plaintiff and cannot enforce its purported forum selection clause.  The mere opportunity to view a given document does not establish the document was reasonably communicated under Massachusetts law and Goodyear fails to cite a single case suggesting otherwise.

In *Ajemian*, the Court considered an affidavit that stated "prospective users are given an opportunity" to review terms of service.  83 Mass. App. Ct. at 567.   The court rejected this "opportunity" as insufficient to establish that those terms were reasonably communicated to

website users.  *See id.* at 575 ("Standing alone, this is not enough to establish that the forum selection provision . . . were reasonably communicated, or to whom they were communicated"). Goodyear, like the defendant in *Ajemian*, merely offered an opportunity to review the Terms, and that is not enough to satisfy the "reasonably communicated" requirement.

The McIntosh Decl. that Goodyear submits in support of its Motion  states that: (1) since June 16, 2021 [McIntosh ¶ 13]; (2) users may have seen a banner that invited them to "[v]isit [Goodyear's] **Privacy Policy**," [McIntosh Decl. ¶ 12] (emphasis in original); and that if users actually clicked on *that* link, and reviewed the *privacy policy*, they might find; (3) "links to the Terms, Conditions and Privacy Policy applicable to the Goodyear website [McIntosh Decl. ¶ 14]. The McIntosh Decl. further states that Goodyear's Privacy Policy and Terms are hyperlinked in the "footer" of Goodyear's website.  McIntosh Decl. ¶ 15.  These facts only establish that Goodyear provides an *opportunity* to view its Terms, not that viewing the Terms  is a requirement to use Goodyear's website.  Thus, just like the defendant in *Ajemain*, Goodyear failed to reasonably communicate its Terms and the forum selection clause contained therein to Plaintiff.

**B.      Plaintiff Did Not Accept the Terms or Forum Selection Clause.**

Goodyear has also failed to present anything showing Plaintiff agreed to the Terms or purported forum selection clause.  Courts generally enforce contractual terms, such as forum selection clauses, in online agreements "only where the record establishe[s] that the terms of the agreement were displayed, at least in part, on the user's computer screen and the user was required to signify his or her assent by 'clicking' 'I accept.'" *Ajemian*, 83 Mass. App. Ct. at 576 (collecting cases).  Such agreements are known as clickwrap agreements.  *Cf. Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62 (1st Cir. 2018) ("Uber chose not to use common method of conspicuously informing users of the existence and location of terms and conditions: requiring users to click a

box stating that they agree to a set of terms, often provided by hyperlink, before continuing to the next screen.").

Goodyear fails to establish that its website includes a clickwrap agreement, and likewise that Plaintiff assented to Goodyear's Terms. Indeed, that is because Goodyear uses a browsewrap agreement on its website, that does not require any affirmative acceptance. Browsewrap agreements are those where website terms and conditions are posted on the website typically as a hyperlink at the bottom of the screen. *Ajemian*, 83 Mass. App. Ct. at 576. Unlike clickwrap agreements, browsewraps are insufficient to evidence the formation of a contract. *See Id.* ("[W]e have found no case where such a clause has been enforced in a browsewrap agreement.").

Goodyear has not carried its burden to show Plaintiff accepted the Terms. *See* Def. Mem., at 15 (suggesting only that Plaintiff was "on notice" of the Terms). Just as in *Ajemian*, Goodyear has not established that Plaintiff manifested, or could have manifested his assent to the Terms. 83 Mass. App. Ct. at 575-76. As a result, the forum selection clause is unenforceable and the Court has no basis under § 1404(a) or otherwise, to transfer this action to the Northern District of Ohio.

## **CONCLUSION**

The Court should deny Goodyear's Motion in its entirety. If the Court determines the pleadings are deficient in any respect, Plaintiff requests leave to amend to cure any such deficiencies. *See Green v. Cosby,* 99 F. Supp. 3d 223, 225 (D. Mass 2015) ("Leave to amend a complaint should be freely given").

Dated: January 31, 2023

*/s/ Brian C. Gudmundson*
Brian C. Gudmundson
Michael J. Laird
Rachel K. Tack
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402

20

Tel.: (612) 341-0400
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.con
rachel.tack@zimmreed.com

Joseph P. Guglielmo BBO #671410
Carey Alexander
Ethan S. Binder
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Fl.
New York, NY 10169
Tel.: (212) 223-6444
jguglielmo@scott-scott.com
calexander@scott-scott.com
ebinder@scott-scott.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Brian C. Gudmundson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 31st day of January, 2023.

*/s/ Brian C. Gudmundson*
Brian C. Gudmundson