UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOE ALVES, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>THE GOODYEAR TIRE & RUBBER COMPANY,<br><br>　　　　　　　　Defendant. | C.A. No. 1:22-CV-11820-WGY<br><br>LEAVE TO FILE GRANTED ON NOVEMBER 10, 2022 (DKT NO. 14) |

**REPLY IN SUPPORT OF THE GOODYEAR TIRE & RUBBER COMPANY'S MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TRANSFER VENUE**

**INTRODUCTION**

In its memorandum in support of its motion to dismiss,[1] The Goodyear Tire & Rubber Company ("Goodyear") demonstrated that (i) plaintiff Joe Alves ("Alves" or "Plaintiff") cannot satisfy his burden of making a *prima facie* showing of personal jurisdiction over Goodyear, and (ii) Alves agreed to litigate this dispute in Ohio. Nothing in Alves' opposition to Goodyear's motion to dismiss (the "Opposition") disturbs these conclusions.

On the issue of personal jurisdiction, Alves does not contest the absence of general jurisdiction over Goodyear, and cannot establish specific jurisdiction because his claims against Goodyear do not arise out of or relate to any activities by Goodyear in Massachusetts, and Goodyear has not purposefully availed itself of the privilege of doing business in Massachusetts through its general website, www.goodyear.com (the "website"), which is accessible from anywhere in the world.

---

[1] Capitalized terms shall be defined for purposes of this reply memorandum as those same terms are defined in Goodyear's opening Memorandum in Support of its Motion to Dismiss ("Opening Memo.").

1

Regarding transfer, Plaintiff is bound to the forum selection clause within Goodyear's website Terms of Use, as he was provided with proper constructive notice of the Terms during his use of www.goodyear.com.

## ARGUMENT

**I.     ALVES FAILS TO MAKE A *PRIMA FACIE* SHOWING OF SPECIFIC JURISDICTION**

While Alves acknowledges his burden at the motion to dismiss stage to make a *prima facie* showing of specific jurisdiction by satisfying each element of the First Circuit's three-part test, *see* Opp'n at 10, Alves fails to make the required showing.  Alves' argument that Goodyear's purported conduct in other states caused Alves to experience injury in Massachusetts does not show—as required by the first prong of the First Circuit's test—that Alves' claims "directly arise[] out of, or relate[] to, the defendant's forum state activities." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016).  "Since [Alves] has failed to satisfy the first prong of the jurisdictional test, [his] argument for specific jurisdiction must fail," and "the "jurisdictional analysis need proceed no further." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001).

Even if Alves could carry his burden on the relatedness prong, he falls at the next hurdle. "The purposeful availment inquiry is intended 'to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state.'" *A Corp.*, 812 F.3d at 60 (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. (quoting *Walden v. Fiore*, 571 U.S. 277 (2014)).  Alves argues throughout his Opposition that Goodyear "directed" its website at Massachusetts.  But Goodyear no more "directed" its website at Massachusetts, than it did at Rhode Island, or

Arkansas, or Hawaii, or any other state in the Union. In reality, Goodyear's website is merely *accessible* from Massachusetts and every other state. But, as explained below, Goodyear is not subject to jurisdiction wherever its website is accessible.

Alves' complaint also fails to allege a statutory basis for jurisdiction under the Massachusetts long-arm statute, G.L. c. 233A. As a result, he spends much of his Opposition attempting to describe how he was injured by browsing Goodyear's website from a location in Massachusetts. *See, e.g.*, Opp'n at 8-9 ("Goodyear's entry into the Massachusetts' economic market, through its website and other business offerings, caused harm to Plaintiff in the Commonwealth.").[2] "The constitutional question is separate from the statutory one, however, and for constitutional purposes, what matters most is the *defendant's* relation to the forum, not the place of the plaintiff's injury." *Gulf Oil Ltd. P'Ship v. Petroleum Mktg. Grp., Inc.*, 308 F. Supp. 3d 453, 460 (D. Mass. 2018) (emphasis in original).

As Alves acknowledges, the allegations regarding Goodyear's relation to Massachusetts are set forth in two paragraphs in the complaint. *See* Opp'n at 10-15 (citing Compl. ¶¶ 8-9). When stripped of their legal conclusions, paragraphs 8 and 9 of the complaint allege that Goodyear (1) "knew that its practices would directly result in collection of information from Massachusetts citizens while those citizens browsed www.goodyear.com;" (2) "chose to avail itself of the business opportunities of marketing and selling its goods and services in Massachusetts and collecting real-time data from website visit sessions initiated by citizens of Massachusetts while located in Massachusetts;" (3) "knows that many users visit and interact with Goodyear's websites while they are physically present in Massachusetts;" (4) "allow[s] a [website] user to search for nearby stores by providing the user's 'current location,' as furnished by the location-determining

---

[2] It bears repeating that Alves does not allege he purchased anything on Goodyear's website or otherwise engaged in any business with Goodyear via its website or otherwise.

3

tools of the device the user is using or by the user's IP address;" and (5) "is continuously made aware that its website is being visited by people located in Massachusetts" as a result of "[u]sers' employment of automatic location services." Compl. ¶¶ 8-9.[3]

Consistent with Supreme Court precedent, courts across the country have made clear that these types of fortuitous interactions are not enough to establish personal jurisdiction over a website owner. *See, e.g., A Corp.*, 812 F.3d at 61 ("[T]he mere availability of a passive website . . . cannot, standing alone, subject a defendant to personal jurisdiction in the forum."); *Massie v. General Motors Co.*, 2021 WL 2142728. at *6 (E.D. Cal. May 26, 2021) ("GM's operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction."). This is true regardless of whether one characterizes Goodyear's website as "passive" or "interactive." As the Seventh Circuit aptly stated:

> The interactivity of a website is also a poor proxy for adequate in-state contacts. We have warned that "'[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *be2 LLC*, 642 F.3d at 558 (citing *Illinois v. Hemi Grp., LLC,* 622 F.3d 754, 760 (7th Cir.2010)). This makes sense; the operation of an interactive website does not show that the *defendant* has formed a contact with the forum state. And, without the defendant's creating a sufficient connection (or "minimum contacts") with the forum state itself, personal jurisdiction is not proper.

*Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014). In *Advanced Tactical Ordinance*, the Seventh Circuit held that simply operating an

---

[3] The remaining allegations in the complaint describe generally what Session Replay technology is, ways it can be used, and how, according to Plaintiff, Goodyear's use of this technology amounts to wiretapping and an invasion of privacy. Goodyear looks forward to refuting these allegations in the appropriate forum. For example, Alves alleges in his complaint that Session Replay Code does not *necessarily* anonymize user sessions and *may* capture personal information, but in Goodyear's case, the data gathered by Content Square *is* anonymized and *not* linked to a specific person, so Alves will not be able to show that his personal information was intercepted or his privacy invaded in any way, and his causes of action will fail. Suffice it to say for present purposes, this is not the proper forum to resolve these merits issues.

interactive website accessible in the forum state (Indiana) and sending emails to people who may happen to live there was not enough to establish personal jurisdiction over a website owner. 751 F.3d at 803. The court reasoned that "[h]aving an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend 'traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 316 (1945)). This is because there is no limiting principle—a plaintiff could sue everywhere the website is accessible. It would also encourage forum shopping and conflict with two sets of values reflected in Supreme Court precedent—"treating defendants fairly and protecting 'interstate federalism.'" *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021).

Here, Goodyear is not alleged to have emailed Alves or reached out to him in any way. Alves' characterization of Goodyear's website as "interactive" does not supply the minimum contacts necessary to hale Goodyear into a Massachusetts court. Moreover, the accessibility of Goodyear's website in Massachusetts is not the cause of Alves' alleged injuries in this case—it's the alleged use of Session Replay technology. *See* Opp'n at 1 ("Goodyear's use of this technology violates its users' privacy expectations and Massachusetts' privacy and wiretap laws.") (citing Compl. ¶¶ 3-4). Alves does not (and cannot) dispute that Goodyear's use of this technology occurred outside of Massachusetts. *See* Opening Memo. at 6-9. Accordingly, Alves' reliance on *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34 (D. Mass. 1997) and related cases—where defendants' websites themselves allegedly caused tortious injury by infringing on the plaintiffs' trademarks—is misplaced. *See, e.g., Chouinard v. Marigot Beach Club and Dive Resort*, C.A. No. 20-10863-MPK, 2021 WL 2256318, at *12 n.23 (D. Mass. June 3, 2021) (distinguishing such cases).

For all of these reasons, the Court should dismiss the complaint for lack of personal jurisdiction.

## II.  IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION

Plaintiff is bound to Goodyear's forum selection clause requiring litigation of this action in Ohio because he was provided with proper notice of the Terms of Use during his use of Goodyear's website. Goodyear's Terms of Use, which contain the controlling forum selection clause at issue, constitutes an enforceable browsewrap agreement against Plaintiff, as Plaintiff had constructive notice of the Terms when he used Goodyear's website. A "browsewrap" agreement is an agreement where "website terms and conditions of use are posted on the website typically as a hyperlink at the bottom of the screen." *Kauders v. Uber Techs., Inc.*, 159 N.E.3d 1033, 1054 (Mass. 2021). Browsewrap agreements are held to be enforceable where users are on notice of the terms of the agreement; a user is deemed to have assented to a browsewrap agreement without affirmative action if the user had actual or constructive notice of a website's terms and conditions. *Small J. LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190 (D. Mass. 2015), *amended*, 13-CV-11701, 2015 WL 5737135 (D. Mass. Sept. 30, 2015), *and aff'd*, 873 F.3d 313 (1st Cir. 2017) (citing *Van Tassell v. United Mktg. Grp.*, LLC, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)). *See also id.* ("no affirmative action is required by a website user to agree to the terms of a [browsewrap] contract other than his or her use of the website") (citing *Van Tassel*, 795 F. Supp. at 790). If there is no evidence of actual notice, then the website owner must show that it "put[ ] a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30–31 (2d Cir. 2002)).

To determine whether a user has inquiry or constructive notice, the Court must examine "the design and content of the website and the agreement's webpage." *Id.* (citing *Nguyen,* 763

6

F.3d at 1177). "[T]he terms must be made conspicuous by features of the website that interpose the terms (or at a minimum, a visually distinctive link to the terms) into the experience of the user in accessing and utilizing the website." *Zajac, LLC v. Walker Indus.*, 2:15-CV-507-GZS, 2016 WL 3962830 (D. Me. July 21, 2016). Courts consider the existence of "larger and contrasting font, the use of headings in capitals, or somehow setting off the term from the surrounding text by the use of symbols or other marks" to determine whether terms are sufficiently conspicuous. *Theodore v. Uber Techs., Inc.*, 442 F. Supp. 3d 433 (D. Mass. 2020) (citing *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62 (1st Cir. 2018)).

In *Small J. LLC v. Xcentric Ventures*, this Court found the constructive notice standard was met for a browsewrap agreement where pages on the website viewed by the plaintiff contained color-contrasting blue hyperlinks to the terms of service, which were "conspicuously visible without scrolling." 99 F. Supp. 3d at 198. The Court found a "reasonably prudent" user was on notice of the relevant website terms, and concluded that the browsewrap agreement was enforceable against the plaintiff. *Id*. at 196. *See also id*. ("a reasonably prudent internet user [] is conversant in the basic navigation tools required to effectively utilize a website").

As in *Xcentric Ventures*, a color-contrasting blue link to Goodyear's Terms of Use appears automatically within a banner in plain sight of each user who accesses the Goodyear website. McIntosh Decl., Ex. A. Plaintiff necessarily was confronted with this conspicuous banner when he accessed www.goodyear.com. *Id*. ¶ 13. In addition, the Terms of Use are conspicuously linked in high-contrast text at the bottom of each page that Plaintiff conceivably navigated to during the entirety of his interaction with Goodyear's website. *Id*. ¶ 15. Under these circumstances, a reasonably prudent internet user is on notice of the Terms of Use.

Plaintiff cites to *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574–75 (2013), *aff'd*, 84 N.E.3d 766 (Mass. 2017) to argue Plaintiff was not provided with reasonable notice of the Terms.

*See* Opp'n at 18.  In *Ajemian*, the appeals court concluded that defendant Yahoo's affidavit stating merely that "[website] users are given an opportunity to review the Terms of Service" on Yahoo's website, without any further indication of conspicuous placement of the terms, was insufficient to establish that plaintiff was on notice of the terms.  *Ajemian*, 83 Mass. App. Ct. at 612.  It noted the possibility "given how the affidavit is phrased, that the user was expected to follow a link to see the terms of the agreement."  *Id*.  "If that was the case," the court continued, "the record would need to contain information concerning the language that was used to notify users that the terms of their arrangement with Yahoo! could be found by following the link, how prominently displayed the link was, and any other information that would bear on the reasonableness of communicating the 2002 TOS via a link."  *Id*.

Here, Goodyear satisfies this exact inquiry by presenting information that demonstrates www.goodyear.com notified all website users of the Terms of Use by prominently displaying the relevant link within its conspicuous cookie banner.  McIntosh Decl. ¶¶ 12-17.  Plaintiff was thus on constructive notice of the Terms and governing forum selection clause, and fails to meet his "substantial burden to demonstrate that enforcement of the forum selection clause is unreasonable in the circumstances."  *Ajemian*, 83 Mass. App. Ct. at 611.  Accordingly, Plaintiff is bound to the forum selection clause requiring that this action be litigated in Ohio. If the Court declines to dismiss this action entirely for lack of personal jurisdiction, Goodyear respectfully requests transfer of Plaintiff's case to the appropriate and agreed-to forum.

**III.    AMENDMENT OF THE COMPLAINT IS NOT JUSTIFIED**

In the concluding paragraph of his Opposition, Alves makes a broad request for leave to amend his complaint to cure any deficiencies the Court may find.  *See* Opp'n at 20.  But amendment would be futile because there is no set of facts upon which Alves could establish personal jurisdiction over Goodyear in this case.  Alves fails to refute the Declaration of Johnny

8

McIntosh, which establishes that Alves' claims arise out of and relate to technology allegedly procured by an Ohio company (Goodyear), from a Washington company (Microsoft) and Delaware company (Content Square), for use on a nationally accessible website that is operated from Ohio (www.goodyear.com).  McIntosh Decl. ¶ 4-9.  An amendment will not change these undisputed facts, and would unnecessarily delay the disposition of this action.  The request should be denied.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Goodyear's memorandum in support of its motion, the Court should dismiss Plaintiff's complaint, or, in the alternative, transfer this action to the Northern District of Ohio.

Respectfully Submitted,

THE GOODYEAR TIRE & RUBBER COMPANY,

By its attorneys,

*/s/ Michael T. Maroney*
Michael T. Maroney (BBO #653476)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
michael.maroney@hklaw.com

Mark S. Melodia (Pro Hac Vice)
Sophie L. Kletzien (Pro Hac Vice)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY  10019
(212) 513-3200
mark.melodia@hklaw.com
sophie.kletzien@hklaw.com

Date:   February 14, 2023

## **CERTIFICATE OF SERVICE**

      I, Michael T. Maroney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 14th day of February, 2023.

                                        */s/ Michael T. Maroney*
                                        Michael T. Maroney

Dated: February 14, 2023