UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOE ALVES, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 22-11820-WGY |
| GOODYEAR TIRE AND RUBBER COMPANY, | ) ) | |
| Defendant. | ) ) | |

YOUNG, D.J.                                        July 24, 2023

## MEMORANDUM AND ORDER

## I.   INTRODUCTION

The Plaintiff, Joe Alves ("Alves") brings this putative class action against the Defendant Goodyear Tire and Rubber Company ("Goodyear"), alleging that Goodyear's use of Session Replay Code technology on its website www.goodyear.com ("the website") violates Massachusetts privacy laws. Kris Olson, Massachusetts seeing wave of 'session replay' suits, Mass Lawyers Weekly July 13, 2023 at 1. See e.g. Alves v. BJ's Wholesale Club, Inc. Suffolk Superior Ct., 22-2509-BLSI (Mass. Super. Ct. June 22, 2023) (Krupp, J.). According to Alves, Goodyear procures Session Replay Code technology through third

parties unlawfully to record users' interactions with its website.

Goodyear moves to dismiss for lack of personal jurisdiction, arguing that Alves has not shown that (1) his claims "arise out of" or "relate to" Massachusetts and (2) Goodyear "purposefully availed" itself of the privilege of conducting activities in the Commonwealth.  In the alternative, Alves asks this Court to transfer the action to the Northern District of Ohio pursuant to the forum selection clause contained in the website's Terms of Use.

After careful consideration, this Court grants Goodyear's motion to dismiss for lack of personal jurisdiction.  Alves grounds his personal jurisdiction case on the notion that the tortious injury occurred and was felt in-State.  That focus, however, is misplaced.  It is well established that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 60 (1st Cir. 2016) (quoting Walden v. Fiore, 571 U.S. 277, 290 (2014)).  Goodyear's intentional activities that gave rise to the present dispute -- including the operation of www.goodyear.com, the licensing and procurement of Session Replay Code technology, and the gathering and usage of user data -- undisputedly all took place outside

[2]

Massachusetts.   Indeed, the only intentional contact between Goodyear and Massachusetts that is relevant to the claims at issue is the accessibility of www.goodyear.com in the Bay State. Yet as matter of law that is not enough to subject Goodyear to this Court's personal jurisdiction.   Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 8 (1st Cir. 2018) ("One baseline principle has emerged: a website operator does not necessarily purposefully avail itself of the benefits and protections of every state in which its website is accessible.").   Therefore, dismissal is warranted.

## II.   PROCEDURAL HISTORY

On October 24, 2022, Alves filed a putative class action complaint ("complaint") pursuant to Federal Rule of Civil Procedure 23 against Goodyear.   Class Action Compl. ("Compl."), ECF No. 1, ¶ 55.   Alves brought the action individually and on behalf of a class comprising of "[a]ll natural persons in Massachusetts whose Website Communications were captured in Massachusetts through the use of Session Replay Code embedded in www.goodyear.com."   Compl. ¶ 55.   The complaint alleges one count for violation of the Massachusetts General Laws chapter 272, section 99 ("Massachusetts Wiretap Statute"), Compl. ¶¶ 64-83, and one count for violation of Massachusetts General Laws

chapter 214, section 1(B) ("Invasion of Privacy").  Compl. ¶¶ 84-97.

On December 16, 2022, Goodyear filed a motion to dismiss the complaint for lack of personal jurisdiction or, in the alternative, transfer venue.  Def.'s Mot. Dismiss the Compl. or, in the Alternative, Transfer Venue ("Def.'s Mot."), ECF No. 32. The parties have fully briefed the issue.  Mem. Law Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 33; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 38; Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), ECF No. 39.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the "aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class, including [Alves], is a citizen of a state different than [Goodyear]."  Compl. ¶ 7.

Alves devotes two paragraphs of the complaint to his assertion of personal jurisdiction.  Specifically, Alves maintains that:

> [t]his Court has personal jurisdiction over Defendant because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in Massachusetts. The privacy violations complained of herein resulted from Defendant's purposeful and tortious acts directed towards citizens of Massachusetts while they were located within

[4]

Massachusetts. At all relevant times, Defendant knew
that its practices would directly result in collection
of information from Massachusetts citizens while those
citizens browsed www.goodyear.com. Defendant chose to
avail itself of the business opportunities of
marketing and selling its goods and services in
Massachusetts and collecting real-time data from
website visit sessions initiated by citizens of
Massachusetts while located in Massachusetts, and the
claims alleged herein arise from those activities.

Goodyear also knows that many users visit and interact
with Goodyear's websites while they are physically
present in Massachusetts. Both desktop and mobile
versions of Goodyear's website allow a user to search
for nearby stores by providing the user's "current
location," as furnished by the location-determining
tools of the device the user is using or by the user's
IP address (i.e., without requiring the user to
manually input an address). Users' employment of
automatic location services in this way means that
Goodyear is continuously made aware that its website
is being visited by people located in Massachusetts,
and that such website visitors are being wiretapped in
violation of Massachusetts statutory and common law.

Compl. ¶¶ 8-9.

### III. FACTS ALLEGED

In a nutshell, Alves submits that Goodyear's use of Session

Replay Code technology violates Massachusetts privacy laws.

Pl.'s Opp'n 1.  Specifically, "Goodyear procures and directs

third-party vendors [("Session Replay Providers")], such as

Microsoft Corporation ("Microsoft"), to embed snippets of

JavaScript computer code ("Session Replay Code") on Goodyear's

website."  Compl. ¶ 1.  When a user visits www.goodyear.com, the

Session Replay Code causes "event data" -- meaning the data

pertaining to the user's use of the website, including their
mouse movements, clicks, and keystrokes -- to be transmitted to
a "designated third-party server," which is typically controlled
by the Session Replay Providers.  Compl. ¶¶ 23-24, 47-48.  Using
the data gathered, "[t]he Session Replay Providers create a
video replay of the user's behavior on the website and provide[]
it to Goodyear for analysis."  Compl. ¶ 2, 46.  Alves alleges
this happened unbeknownst to him while he visited Goodyear's
website in late 2021 and early 2022 to shop for tires.  Compl.
¶¶ 43-46.

Moreover, according to Alves, Goodyear is aware that
Session Replay Code technology collects data from Massachusetts
residents.  Compl. ¶¶ 8-9.  Indeed, "[b]oth desktop and mobile
versions of Goodyear's website allow Plaintiff and other users
to search for nearby stores by providing [their] 'current
location,' as furnished by the location-determining tools of the
device the user is using or by the user's IP address."  Id.

As to the parties' domicile, Alves is a Massachusetts
resident, Compl. ¶ 5, while Goodyear is an Ohio corporation with
a principal place of business in Ohio.  Id. ¶ 6; Decl. of Johnny
McIntosh ("McIntosh Decl."), ECF 34, ¶ 4.  Goodyear's marketing
team -- which operates Goodyear's website and receives and
utilizes session replay recordings -- is based in Ohio.
McIntosh Decl. ¶ 6.  www.goodyear.com is accessible anywhere in

[6]

the United States and the world.  Def.'s Reply 1; McIntosh Decl.
¶ 5.  The only Session Replay Provider identified in the
complaint is Microsoft, a Washington corporation that utilizes
Session Replay Code technology licensed outside of
Massachusetts.  Def.'s Mem. 7, 9.

## IV.  ANALYSIS

Alves asks this Court to assert specific personal
jurisdiction over Goodyear, a corporation that is concededly not
"at home" in Massachusetts.  Compl. ¶¶ 8-9; Pl.'s Opp'n 1.
Goodyear moves to dismiss, arguing that Alves has not shown that
(1) his claims "arise out of" or "relate to" Massachusetts, and
(2) Goodyear "purposefully availed" itself of the privilege of
conducting activities in the Bay State.  Def.'s Mem. 1.

A "plaintiff bears the burden of showing that the Court has
authority to exercise jurisdiction over defendants." Heng Ren
Invs. LP v. Sinovac Biotech Ltd., 542 F. Supp. 3d 59, 64 (D.
Mass. 2021) (Gorton, J.), citing Cossart v. United Excel Corp.,
804 F.3d 13, 18 (1st Cir. 2015).  To meet that burden, Alves
must show that exercising personal jurisdiction over Goodyear
comports with the Due Process Clause of the Fourteenth
Amendment.  Motus, LLC v. CarData Consultants Inc., 520 F. Supp.
3d 87, 90 (D. Mass. 2021) (Gorton, J.).  Specifically, the First

Circuit employs a three-pronged test to determine whether the exercise of specific jurisdiction is constitutional:

> (1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable.

Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 3-4 (1st Cir. 2016).  "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction."  Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

Here, Alves has failed to discharge his burden to show that the exercise of personal jurisdiction would be consistent with Due Process.  Accordingly, this Court refuses to exercise personal jurisdiction over Goodyear.

### A.   Pleading Standard

To withstand a motion to dismiss, a complaint must "state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).  The complaint must include sufficient factual allegations that, accepted as true, "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Courts "draw every reasonable inference" in favor of the plaintiff, Berezin v. Regency Sav. Bank, 234

[8]

F.3d 68, 70 (1st Cir. 2000), but they disregard statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action," Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (brackets, ellipsis, and quotations omitted).

### B.   Lack of Personal Jurisdiction

The facts alleged in the complaint do not establish a sufficiently strong relationship between Goodyear's (not Alves's) intentional activities in Massachusetts and the dispute to warrant this Court's exercise of personal jurisdiction.

Stripped of its conclusionary assertions, the essence of Alves's argument is that this case "relates to" Massachusetts because Alves accessed the website while physically present in the state and therefore the "tortious injury" occurred there. Pl.'s Opp'n 11 ("The tortious injury (the invasion of privacy and recording without consent) occurred when [Alves] visited the website in Massachusetts and could not have occurred otherwise. As a result, [Alves] has satisfied the relaxed "arising from" standard for relatedness."). Alves's focus on the place of the injury, however, is misplaced. It is well established that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." All Am. Plumbing, 812 F.3d at 60 (quoting Walden v. Fiore, 571 U.S. 277,

290 (2014)); <u>Gulf Oil Ltd. P'Ship</u> v. <u>Petroleum Mktg. Grp., Inc.</u>, 308 F. Supp. 3d 453, 460 (D. Mass. 2018) (O'Toole, J.) ("[F]or constitutional purposes, what matters most is the <u>defendant's</u> relation to the forum, not the place of the plaintiff's injury.") (emphasis in original).

Alves's "best" permutation of this argument suffers from a similar flaw.  While it may be true that, as Alves contended at oral argument, the rerouting of data, and thus the interception, physically occurs in Massachusetts, <u>Popa</u> v. <u>Harriet Carter Gifts, Inc.</u>, 52 F.4th 121, 131 (3d Cir. 2022), that is not the result of Goodyear's intentional act, but of Alves's.  The only reason why www.goodyear.com interacted with a browser located in Massachusetts is that <u>Alves</u> accessed the website in the State.[1] The personal jurisdiction analysis, however, concentrates on the

---

[1] As the complaint acknowledges, the "claims alleged herein arise from" the "collect[ion] of real-time data from website visit sessions <u>initiated</u> by citizens of Massachusetts while located in Massachusetts." Compl. ¶ 8 (emphasis added). Moreover, Alves does not and cannot argue that the mere publication of Goodyear's website constitutes a violation of Massachusetts privacy laws. Consequently, Alves's reliance on <u>Hasbro Inc.</u> v. <u>Clue Computing Inc.</u>, 994 F. Supp. 34, 39 (D. Mass. 1997) (Saris, J.) and related jurisprudence is misplaced. These trademark cases have found the relatedness prong satisfied where the "publication of a website in Massachusetts" constituted in itself the alleged tortious conduct. <u>Morphotrust USA, LLC</u> v. <u>Identrix, LLC</u>, No. 16-CV-10074, 2016 WL 3512131, at *5 (D. Mass. June 21, 2016) (Casper, J.). Not so here. <u>See</u>, e.g., <u>Chouinard</u> v. <u>Marigot Beach Club and Dive Resort</u>, C.A. No. 20-10863-MPK, 2021 WL 2256318, at *12 n.23 (D. Mass. June 3, 2021) (Kelly, M.J.) (distinguishing such cases on that basis).

[10]

contacts the "defendant himself" created with the forum -- not those created by the plaintiff.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 463, 105 S. Ct. 2174, 2177, 85 L. Ed. 2d 528 (1985) (emphasis in original); see also Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 163 (1st Cir. 2022) (quoting Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 716 (1st Cir. 1996)) (holding that the defendant's contacts with the forum state must be "of its own making and 'not based on the unilateral actions of another party or a third person.'").

Focusing on Goodyear's intentional acts that gave rise to the present dispute, they have occurred outside Massachusetts -- a fact that Alves does not dispute.  As described above, Goodyear's alleged violation of Massachusetts wiretapping laws stems from the following activities.  Goodyear "procures" Session Replay Providers to embed the Session Replay Code on the website.  Compl. ¶ 1.  When a user visits www.goodyear.com, the Session Replay Code causes "event data" to be transmitted to the Session Replay Providers.  Id. ¶¶ 23-24.  Using the data gathered, "[t]he Session Replay Providers create a video replay of the user's behavior on the website and provide[] it to Goodyear for analysis."  Id. ¶ 2.  Except for the user's activities, none of Goodyear's and Session Replay Providers' intentional acts occur in Massachusetts.  Goodyear is an Ohio corporation with its principal place of business in Ohio.

Macintosh Decl. ¶¶ 4-5.  The only Session Replay Provider
identified in the complaint is Microsoft, a Washington
corporation, which utilizes Session Replay Technology licensed
outside of Massachusetts.  Def.'s Mem. 7, 9.  Thus, it is
reasonable to infer that Goodyear and Microsoft contracted for
the procurement of Session Replay Code technology outside
Massachusetts.  Equally reasonable is the inference that the
"designated third-party servers" that receive the "event data"
are located outside Massachusetts.  Moreover, Goodyear's
marketing team -- which runs Goodyear's website and receives and
utilizes Session Replay recordings -- is based in Ohio.
Macintosh Decl. ¶¶ 4-6.  In short, Goodyear's procurement and
use of Session Replay Code technology relate to conduct
occurring outside of Massachusetts, and so does this dispute.

    In fact, this case is analogous to Massie v. Gen. Motors
Co., No. 20-CV-01560, 2021 WL 2142728 (E.D. Cal. May 26, 2021) -
- which, although not precedential, this Court finds persuasive.
In Massie, California residents alleged that General Motors Co.
("GM") violated the Federal Wiretap Act and California Invasion
of Privacy Act by employing Decibel Insight, Inc. ("Decibel")
replay technology on GM's nationally accessible Chevrolet
website.  Id. at *1.  Both GM and Decibel are incorporated and
have their primary place of business outside California.  Id. at
*3 The court dismissed the case holding that "GM's operation of

[12]

broadly accessible websites [did] not constitute the type of
minimum contacts with the forum needed for specific personal
jurisdiction." Id. at *6. The court emphasized that
"Plaintiffs' claims arise from and relate to session recording
software allegedly installed on GM's nationally accessible
websites, software that GM licensed and used outside
California." Id. Similarly, Goodyear's (and Microsoft's) use
of Session Replay Code technology occurred outside of
Massachusetts. The present dispute, therefore, does not "arise
out of" or "relate to" Massachusetts.

Alves attempts to escape this conclusion in two ways.
First, Alves appeals to the interactive nature of Goodyear's
website. Pl.'s Opp'n 12-14. For Alves "Massie is
distinguishable because, unlike in Massie, Plaintiff here
plausibly alleged [www.]goodyear.com is an interactive website .
. . that solicited actual, direct sales from Massachusetts
residents, and offered residents[] the ability to schedule
services provided by Goodyear at one of its many service
locations in Massachusetts." Pl.'s Opp'n 12, fn. 3. This
argument cannot be accepted. As matter of law, the relevance of
a website's interactivity for personal jurisdiction purposes has
long been discounted. Motus, 520 F. Supp. 3d at 92 ("[C]ourts
have historically evaluated the level of 'interactivity' of a
nationally accessible website to determine whether the

[13]

accessibility of the defendant's website by residents in the
forum state constitutes 'purposeful availment'. See, e.g., Zippo
Manufact. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124
(W.D. Pa. 1997) . . . . Recently, however, because 'virtually
every business now has a website,' Media3 Techs., LLC v.
CableSouth Media III, LLC, 17 F. Supp.3d 107, 112 (D. Mass.
2014), and 'virtually every website today is [at least]
moderately interactive', the analysis has changed.").  As the
Seventh Circuit aptly ruled:

> The interactivity of a website is also a poor proxy
> for adequate in-state contacts. We have warned that
> '"[c]ourts should be careful in resolving questions
> about personal jurisdiction involving online contacts
> to ensure that a defendant is not haled into court
> simply because the defendant owns or operates a
> website that is accessible in the forum state, even if
> that site is 'interactive.'" be2 LLC, 642 F.3d at 558
> (citing Illinois v. Hemi Grp., LLC, 622 F.3d 754, 760
> (7th Cir.2010)). This makes sense; the operation of an
> interactive website does not show that the defendant
> has formed a contact with the forum state. And,
> without the defendant's creating a sufficient
> connection (or "minimum contacts") with the forum
> state itself, personal jurisdiction is not proper.

Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball,
Inc., 751 F.3d 796, 803 (7th Cir. 2014).  Even setting this
aside, it is difficult to see how www.goodyear.com's
interactivity would assist Alves in satisfying the relatedness
prong.  The claims here arise out of Goodyear's use of Session
Replay technology.  The interactive features of www.goodyear.com
-- which allow Goodyear to solicit sales from Massachusetts

[14]

residents "and offer[] [Massachusetts] residents' the ability to
schedule services" -- are unrelated to Goodyear's use of Session
Replay technology and this dispute.  Pl.'s Opp'n 12, fn. 3.  In
fact, Alves is not alleged to have purchased tires or scheduled
service with a Goodyear store at all.  Therefore,
www.goodyear.com's interactivity does not supply the necessary
minimum contacts that would allow this Court to assert
jurisdiction over Goodyear.

Alves's second attempt to distinguish Massie is equally
unsatisfactory.  Through Goodyear's website use of automatic
location services, Alves argues, "Goodyear knew it was
soliciting and recording Plaintiff and the Class in
Massachusetts.  Massie, therefore, is entirely inapposite."
Pl.'s Opp'n 12, fn. 3.  This argument ignores the plain text of
Massie.  In that case, the court found jurisdiction to be
lacking notwithstanding that "Decibel's software collect[ed]
users' 'location at the time of the visit,' meaning Defendants
knew they were wiretapping California consumers."  Massie, 2021
WL 2142728, at *5.  Alves offers no reason to attack Massie's
holding.  Nor does this Court find any.  In fact, Massie well
conforms with First Circuit jurisprudence, according to which
mere awareness of the plaintiff's location is insufficient to
establish jurisdiction.  Phillips v. Prairie Eye Ctr., 530 F.3d
22, 28 (1st Cir. 2008) ("We have held, however, in a variety of

contexts, that the defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant.").

Ultimately, the only intentional contact between Goodyear and Massachusetts that "relates to" the claims at issue is the accessibility of www.goodyear.com from Massachusetts.[2]  The mere

_____

   [2] This Court might have come out differently on this point had it been persuaded that the principles of Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 209 L. Ed. 2d 225, 141 S. Ct. 1017 (2021) were applicable here.  In Ford, the Supreme Court held that a causal showing is not necessary to demonstrate that a dispute "relates to" the forum state.  Id. at 1026.  Thus, the product liability suits in that case "related to" Montana and Minnesota even if the cars, the object of the dispute, had been designed and sold out-of-state.  This was so because Ford had "systematically served a market" for those cars in the forum states -- including by advertising the same model of cars in Montana and Minnesota, as well as regularly servicing, repairing, and distributing replacement parts for those vehicles in-state.  Id. at 1028.  The majority opinion stressed that "[t]hose contacts might turn any resident of Montana and Minnesota into a Ford owner" and that "these suits might never have arisen, except for Ford's contacts" with those states.  Id. at 1029.
   Here, the causal relationship between Goodyear's intentional contacts with the forum state -- including in-state advertising and the establishment of service locations -- and the dispute is hardly weaker than the one described in Ford. Goodyear advertises its website in Massachusetts, allows residents to locate Massachusetts service stations via the website, as well as schedule appointments there.  See Pl.'s Opp'n 12-13.  These contacts might well "turn any resident" of Massachusetts into a www.goodyear.com user and so the present suit "might never have arisen, except for" Goodyear's intentional contacts with Massachusetts.
   For three reasons, however, this Court concludes that Ford is inapplicable to the facts of the present case.  First, the majority opinion expressly disclaimed that it was not concerned with internet-based contacts, "which may raise doctrinal questions of their own."  Id. at 1028 n.4.  Second, the nature

availability of a generally accessible website operated out-of-
state, however, is not enough of a connection to warrant this
Court's exercise of personal jurisdiction. <u>Plixer</u>, 905 F.3d at
8 ("One baseline principle has emerged: a website operator does
not necessarily purposefully avail itself of the benefits and
protections of every state in which its website is
accessible."). "Having an 'interactive website' . . . should
not open a defendant up to personal jurisdiction in every spot
on the planet where that interactive website is accessible.  To
hold otherwise would offend 'traditional notions of fair play
and substantial justice.'" <u>Advanced Tactical Ordnance Sys.</u>, 751
F.3d at 803.  Alves's threadbare allegation that
www.goodyear.com is "directed" toward Massachusetts does not
alter this fact.  Pl.'s Opp'n 11.  Alves offers no evidence to
show that the website is especially tailored for Massachusetts
consumers or that Goodyear made special efforts to market its

---

of the injury in <u>Ford</u> was physical, unlike here.  For the
relevance of this difference see Alan M. Trammell and Derek E.
Bambauer, <u>Personal Jurisdiction and the Interwebs</u>, 100 CORNELL L.
REV. 1129 (2015).  Finally, the absence of a limiting principle
troubles this Court.  If in-state advertising of a website and
the establishment of physical stores sufficed to establish
jurisdiction, virtually every major corporation could be haled
into court in all fifty states for its internet-based
activities.  This outcome would encourage forum shopping and
conflict with the values articulated in <u>Ford</u> of "treating
defendants fairly and protecting 'interstate federalism.'" <u>Id.</u>
at 1025.  Therefore, the only contact between Goodyear and
Massachusetts relevant for the relatedness analysis is the
accessibility of www.goodyear.com from Massachusetts.

website in the Commonwealth.  In fact, "Goodyear no more
'directed' its website at Massachusetts, than it did at Rhode
Island, or Arkansas, or Hawaii, or any other state in the
Union."  Def.'s Reply 2-3.  Therefore, dismissal is warranted
here.

### C.    Dismissal Is Without Prejudice

Alves asks this Court to grant him leave to amend in case
of a dismissal.  Pl.'s Opp'n 20.  Goodyear opposes this request
and demands that the complaint be dismissed with prejudice.
Def.'s Reply 8-9.  Goodyear's opposition must be rejected.  As
the First Circuit recently held in Rodríguez-Rivera "dismissal
on jurisdictional grounds, as opposed to a merits dismissal,
should ordinarily be made without prejudice."  43 F.4th at 162.
Moreover, this Court is confident that Alves's lawyers will use
their discretion -- informed by the present opinion -- wisely.
Therefore, Alves's request to dismiss the present complaint with
leave, within 30 days of the date of this opinion, to file a
motion for leave to file an amended complaint is granted.

### V.    CONCLUSION

For all the above, this Court **GRANTS** Goodyear's motion to
dismiss for lack of personal jurisdiction (ECF No. 32) and
**DISMISSES** this action **WITHOUT PREJUDICE.**

**SO ORDERED.**

William G. Young

[18]

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

---

[3] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.

[19]